## J. C. LEAGUE v. SANGER BROTHERS ET AL.

Decided February 20, 1901.

**Growing Crops—Mortgage—Landlord's Lien—Rescission.**

　　The lien of a mortgage on crops to be raised on premises held by the mortgagor under executory sale, is superior to that created in favor of his vendor as a landlord, by a rescission of the sale and conversion of his holding into a tenancy, made after the crops were growing and the mortgage had attached to them.

Appeal from the County Court of McLennan. Tried below before Hon. J. N. Gallagher.

*W. M. Sleeper,* for appellant.

*Boynton & Boynton,* for appellees.

COLLARD, ASSOCIATE JUSTICE.—Appellant's brief correctly states the nature and result of this suit, which we adopt, as follows:

"This suit was instituted by Sanger Brothers and Isaac Burnstein, as plaintiffs, against P. H. Compton, J. L. Braswell, C. F. Lynch, and J. C. League, in the County Court of McLennan County, on the 18th day of December, 1899.

"Plaintiffs sought to recover judgment against defendant P. H. Compton on a note for $666, and also to foreclose two certain chattel mortgages on certain personal property.

"J. L. Braswell was made a party defendant on the allegation that he was in possession of a part of the personal property. C. F. Lynch was made a party defendant on the ground that he gathered and marketed certain corn and cotton included in said mortgages, and had sold the same, and had in his possession the sum of $130 as the proceeds thereof. J. C. League was made a party defendant on the ground that he claimed some right or interest in a crop of cotton and corn alleged by plaintiffs to be included in said mortgages.

"It was agreed between plaintiffs and League and Lynch that the latter should be permitted to gather and market the said crop and hold the proceeds subject to the order of some court of competent jurisdiction, and should it be determined that the plaintiffs had the superior claim to said proceeds, the same should be paid over to plaintiff, but if it was held that the said J. C. League had a superior claim, then such proceeds were to be turned over to said J. C. League.

"The cause was tried before the court without the intervention of a jury, and the court held that the plaintiffs had the superior claim to the said sum of $130 in the hands of Lynch and rendered judgment accordingly.

"J. C. League excepted to the judgment of the court, and gave notice of appeal, and filed his appeal bond in the time prescribed by law, and brings this case to this court for revision and correction."

The parties made an agreed statement of the pleading and proof which was approved by the trial court, and we adopt the same, as follows:

"1.   On to wit, the 18th day of December, 1899, Isaac Sanger, Alexander Sanger, Phillip Sanger, and Sam Sanger, composing the firm of Sanger Brothers, and Isaac Burnstein, instituted suit against P. H. Compton to recover judgment against him on a note for $666, dated November 8, 1897, and due October 1, 1898, and bearing 10 per cent per annum interest from date, and providing for 10 per cent attorney's fee on the amount of said note as collection fees; the plaintiffs also sought a foreclosure on two mortgages executed by P. H. Compton to them to secure the payment of said note, and made one J. L. Braswell a party defendant, alleging that he had in his possession a portion of the alleged property.   One of the mortgages set out in said petition was dated November 6, 1898, and among other things included all the crop of corn and cotton grown and to be planted or to be grown for the year 1899 on the Compton farm, about eight miles east of Waco, and all crops to be grown on said farm for and during succeeding years until said debt should be fully paid off.

"Plaintiffs alleged that after said crops were grown on said land and before the same were gathered, the said P. H. Compton turned the same over to one C. F. Lynch, who was also made a party defendant to the suit, and who gathered and marketed the crop of corn and cotton grown by said Compton on said land for the year 1899, and which was covered by plaintiff's mortgage of date November 6, 1898, and that the proceeds of the sale of said crop amounted to the sum of $130, which the said Lynch retained in his hands.

"Plaintiffs further alleged in their said petition that one J. C. League claims to have some right or interest in and to the crop of said Compton, raised on said premises for the year 1899.   It was agreed by and between plaintiffs and the said League and C. F. Lynch that the latter should be permitted to gather and market said crop, and hold the proceeds derived from the sale of the same, subject to the order of some court of competent jurisdiction; that it should determine the controversy between the plaintiffs and the said League as to their rights in said crop or the proceeds derived from the sale of the same.

"Plaintiffs prayed on final hearing for a judgment of the court that said J. C. League had no right or interest in and to said crop or proceeds derived from the sale thereof in the hands of the said C. F. Lynch, and that an order be entered by the court commanding said C. F. Lynch to pay over to plaintiffs the proceeds now in his hands, amounting to $130, derived from the sale of said crop, and that plaintiffs have their judgment against said Compton for the amount of said note of $666, together with interest and attorney fees, and for foreclosure of their mortgage upon all of the property described in said petition.

"J. C. League filed his plea of intervention in said cause on the 28th day of July, 1900, wherein he set out and alleged that on the 3d day of

February, 1896, he with one C. W. Gill, being the joint owners of the tract of land described in plaintiffs' petition as the Compton farm, and on which the crop of cotton and corn was grown whereon plaintiffs seek a foreclosure of the mortgage set out in their original petition and from the sale of which crops the $130 in the hands of C. F. Lynch was derived. And that on said last named date he and said Gill sold and conveyed said land to said P. H. Compton, who paid them therefor the sum of $665 in cash and gave them his five notes, one for $500 due twelve months after date, and four for $795.44 each, due respectively twelve, twenty-four, thirty-six, forty-eight, and sixty months after date, bearing interest at 8 per cent per annum payable annually, and that by the terms of said notes, and said deed by which said land was sold to said Compton, the vendor's lien was expressly retained on said land to secure the payment of said notes; and that said Compton failed to pay the notes which became due on the 3d day of February, 1897, and the 3d day of February, 1898, and failed to pay the annual installments of interest which fell due on said dates on said notes; and that thereupon said League rescinded the contract of sale and demanded possession of said premises from said Compton; and said Compton admitted his inability to pay the balance of the purchase money due for said land and agreed to deliver the possession of the same to said League and abandon his contract to purchase said land; and thereupon said League and said Compton entered into a written agreement dated 20th day of May, 1899, whereby said League leased and rented said land to the said Compton for the year 1899, he agreeing to pay said League as rent for said land for the said year the sum of $350 payable on the 1st day of November, 1899; and to secure the payment thereof, the statutory landlord's lien was retained on all crops of every kind to be raised on said land during said year. Upon the terms of the contract, it was further agreed that should said Compton on or before January 1, 1900, pay said League all past due indebtedness on said purchase money notes, or satisfy him for said indebtedness, then the said $350 was to be applied as a credit on said purchase money notes, and said deed to remain in full force and effect; but in event he failed to do so then Compton agreed to surrender possession of said land to said League on January 1, 1900, and execute to him a release for said land, and said League should cancel and surrender said notes to said Compton.

"Said League averred that said Compton had failed to pay to him the said $350 or any part thereof, and that he had never complied with the terms of the aforesaid agreement of May 20, 1899, and that by reason of the facts hereinbefore alleged, he held the landlord's lien against the said sum of $130 in the hands of the said C. F. Lynch derived from the sale of the crops grown on said land for the year 1899, which was prior and superior to the mortgage claim of plaintiff based upon their said mortgage on said crops given by said Compton on November 6, 1898; and he prayed for a judgment foreclosing his said lien on said sum of money; for an order directing the said Lynch to pay the same

over to him, the said J. C. League.  On the 28th day of July, 1900, the cause was tried before the court without the intervention of a jury upon an agreed statement made under the provisions of article 1293 of the Revised Statutes of Texas, of the evidence, as follows:

"1.  That on to wit, the 3d day of February, 1896, the said J. C. League, joined by C. W. Gill, conveyed by deed to P. H. Compton a certain tract of land out of the Thos. De la Vega eleven league grant in McLennan County, Texas, situated on Tehuacana Creek, and which is the same land on which the crops of cotton and corn were grown set out in the mortgages as alleged in plaintiff's original petition, said Compton paying therefor the sum of $665 in cash, and executing to said League his five promissory notes of even date with said deed, falling due respectively twelve, twenty-four, thirty-six, forty-eight, and sixty months after date, the first note falling due twelve months after date for $500 and the others for the sum of $795.44 each, amounting in the aggregate to $3681.76, which said notes bore 8 per cent interest per annum from date, interest payable annually, and by the terms of said deed and said notes, the vendor's lien was expressly retained on said land to secure the payment of the said notes, and that said deed was duly recorded in the deed records of McLennan County shortly after the date of the same.

"2.  That P. H. Compton being justly indebted to plaintiffs on the 8th day of November, 1897, in the sum of $666, which is now unsatisfied and a valid and subsisting debt, said Compton executed his promissory note in favor of plaintiffs for said amount payable October 1, 1898, bearing 10 per cent interest per annum from date, and providing for 10 per cent additional interest as an attorney's fee if placed in the hands of an attorney for collection; and on even date therewith, executed in favor of plaintiffs a mortgage to secure the payment of said note on all the crop of cotton and corn to be raised on his farm, being the property purchased as aforesaid from said League for the season of 1898, and which mortgage included certain stock and other personal property not in controversy herein, and for successive years until said indebtedness should have been fully paid, and on November 6, 1898, said indebtedness not having been paid, and said Compton still owning and residing on said premises, to further secure plaintiffs in the payment of their said debt evidenced by said note, executed a further mortgage in which he gave plaintiffs a lien on all the crop of corn and cotton to be raised and grown by him on said place, the premises purchased from said League aforesaid for the season of 1899, and for all successive years until said indebtedness shall have been fully paid; said mortgages having been duly filed and registered immediately following their execution in the chattel mortgage records of McLennan County, Texas.

"3.  On to wit, the 20th day of May, 1899, P. H. Compton, in an instrument reciting his failure to pay the balance of the purchase money due said League on the aforesaid land and his inability to pay the same, entered into a contract with said League acknowledging himself to be

a tenant of said League and to hold for the future said land as such, agreeing to pay him as rent for the same for the year 1899 the sum of $350, to become due and payable on the 1st day of November, 1899, and secured by a landlord's lien on all the crops of every kind to be raised on said land for the year 1899. It being agreed further that in event that on or before the 1st day of January, 1900, said Compton shall have paid said League all past due indebtedness on said purchase money notes given as aforesaid, or satisfied him, the said League, for the said indebtedness, then the said sum of $350 was to be applied on said purchase money notes, and the said deed to said land to remain in full force and effect; but in the event of failure on the part of said Compton to pay past due indebtedness on the said purchase money of the said land, or to satisfy said League therefor, on or before the 1st day of January, 1900, then said Compton agreed to surrender possession of said land to said League on January 1, 1900, and execute to him releases for said land, and said League should then cancel and surrender to said Compton the notes given by him as a part of the purchase money for the said land. This agreement and contract by and between Compton and League has never been put of record. Plaintiffs had no notice whatever of the fact that P. H. Compton had made default in his payments to League of the notes mentioned in said deed until up to or about October 14, 1899, or of League having elected to rescind his contract of sale to Compton. All the crop of corn and cotton raised for the season of 1899 on said premises was planted and growing at the time of the execution by said Compton of the contract above referred to with said League.

"4. On or about September 15, 1899, P. H. Compton left the premises purchased by him from the said League, as aforesaid, and on which was growing the crop of corn and cotton on which he had given a mortgage to plaintiffs of date November 6, 1898, above referred to, and authorized one C. F. Lynch to gather and market said crop of corn and cotton grown on said premises for the season of 1899, and never paid League the said sum of $350 mentioned in the contract of May 20, 1899.

"5. That the note of Compton to League for the land, which fell due on November 3, 1897, for $500, and the annual interest on the other notes, was not paid on said notes on said date, but $400 was paid on account thereof to said League, who agreed to wait until February 3, 1898, for the balance. That on February 3, 1898, Compton failed to pay any further sum on said notes, and never did pay any further sum on said notes, and never did pay any more on said notes to said League.

"6. That plaintiffs claimed said crop of corn and cotton under and by virtue of the said mortgages, and said J. C. League contended for the same under and by virtue of his contract with said Compton of date May 20, 1899, to which reference has above been made; and on October 14, 1899, plaintiffs, said League and C. F. Lynch, entered into a written agreement to the effect that said C. F. Lynch should be permitted to market and gather said crop of corn and cotton and hold the proceeds derived from the sale of the same, after deducting the necessary costs

incident to the gathering and marketing of said crop, subject to the order of some court of competent jurisdiction that should determine the controversy by and between plaintiffs and said League as to their rights in said crop or the proceeds derived from the sale of the same, in the event they were unable to adjust such matters without resort to legal proceedings. That Compton never performed the contract of purchase, and surrendered possession to said League on or about January 1, 1900; that said Lynch gathered and disposed of said crop in accordance with the above agreement, and after deducting all necessary expenses incident to the gathering and marketing of the same, has now on hand, which he holds subject to the order of the court, the sum of $130.

"7.  That the sole matter in controversy between plaintiffs and said League, and which they submit to the court and ask its determination, is the question as to which of said parties is entitled to the prior claim on said crop and the proceeds in the hands of C. F. Lynch derived from the sale of such crop in accordance with the terms of the agreement entered into by and between plaintiffs and the said League, to which reference is above made.

"Plaintiffs seek to foreclose their mortgages against P. H. Compton and J. L. Braswell on all property mentioned in their mortgages and the judgment of the court in this cause.

"We agree that the foregoing is a true and correct statement of the pleading and proof as presented upon the trial of the cause of Sanger Brothers et al. v. P. H. Compton et al., No. 4743, in the County Court of McLennan County, Texas."

*Opinion.*—It will be noticed that Compton's purchase from League, by the terms of the rescission, was not to take effect until January 1, 1900, when the crops were mature, and that he, Compton, abandoned the premises September 15, 1899. This conditional rescission of the sale by which he was to become tenant of League was not executed until the 20th day of May, 1899, to take effect in the future, if at all. The facts show that when it did take effect the mortgages of plaintiffs, duly registered at their dates, had already applied to the crops. League was Compton's vendor, and as such, while that relation continued, had no lien on the crops,—his lien being on the land only. These conditions and facts gave plaintiffs a valid mortgage on the crops, subsisting and in effect at the time the rescission of the sale of the land and the change of Compton from a vendee to a tenant became operative. Therefore it must be held that plaintiffs' lien was superior to that of League, as it could not be postponed to the subsequent lien of League as a landlord. A chattel mortgage on crops to be subsequently raised is valid in equity. Richardson v. Washington, 88 Texas, 344, et seq. The crops in the case before us were in existence, and plaintiffs' mortgages had applied to them before the relation of landlord and tenant between League and Compton had any existence. This being true, the mortgages of plaintiffs were prior and superior to the landlord's lien, created in toto after plaintiffs'

liens by mortgages had attached to the property then in esse. We do not hold that a vendee owing the purchase money could not in any case rescind the sale of land with his vendor and become a tenant, so as to defeat a mortgage to another on future crops. It is not necessary to so hold in this case to give plaintiffs' mortgages priority, as will be seen from the facts, the mortgages having applied before there was in fact a landlord and tenant relation.

We find no error in the judgment of the lower court, and it is affirmed.

*Affirmed.* ·