CALDWELL, HUGHES & PATTERSON v. YARBROUGH. (No. 1611.)

(Court of Civil Appeals of Texas. Texarkana. April 27, 1916. Rehearing Denied May 11, 1916.)

1. VENDOR AND PURCHASER ☞50—PURCHASE-MONEY NOTES—MORTGAGE—CONSTRUCTION.

Defendant, who gave a bond to convey a tract of land, and who at the same time and to secure payment of part of the purchase-money notes took a mortgage on certain bales of cotton which the purchaser expected to grow on the land during certain years, was not a vendor of the crops to be grown on the land, but a vendor of land alone, and the indebtedness was for the purchase money, and not for the crops the purchaser contemplated growing thereon.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 81; Dec. Dig. ☞50.]

2. CHATTEL MORTGAGES ☞144—RECORD—PRIORITY.

In such case the plaintiffs who had taken mortgage of the crops which the purchasers expected to grow on the land, which were recorded prior to the vendor's mortgage, had a prior lien.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 241; Dec. Dig. ☞144.]

3. CHATTEL MORTGAGES ☞12 — AFTER-ACQUIRED PROPERTY—CROPS.

A chattel mortgage on crops not in existence and to be grown on land of the mortgagor will be enforced as a lien on the crops when they come into the possession of the mortgagor, when their acquisition from the land was contemplated when the mortgage was made.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 59, 60; Dec. Dig. ☞12.]

Appeal from Henderson County Court; C. D. Owens, Judge.

Action by Caldwell, Hughes & Patterson against C. R. Yarbrough. Judgment for defendant, and plaintiff appeals. Reversed, and judgment rendered for plaintiff against defendant.

Appellee owned a tract of land in Henderson county, and, it seems from his testimony, in September or October, 1912, verbally agreed with Tom Dewberry and Sam McDonald to sell same to them. Dewberry and McDonald, according to the understanding then reached, were to give appellee a mortgage on the crop, or a part of it, they expected to grow on the land, to secure the payment of a part of the sum they were to pay for it. Dewberry and McDonald were indebted to appellants, and to secure their indebtedness and $320 which they borrowed of appellants November 18, 1912, to pay to appellee on the land, they on that date mortgaged to appellants the cotton, corn, and cane crops they might grow during the years 1913, 1914, and

1915 on a farm described as belonging to them situated in Henderson county about three miles northwest from Chandler, or on any other lands cultivated by them in said county.

November 20, 1912, the mortgages were filed for registration in the office of the county clerk of Henderson county. At the time the mortgages were made, to wit, November 18, 1912, appellants delivered to Dewberry and McDonald their check payable to appellee's order for $320. Dewberry and McDonald delivered the check to appellee—when does not appear from the record except by inference—and the amount thereof was paid to him by the bank on which it was drawn.

Appellant Caldwell, who acted for his firm in the negotiations resulting in the loan to Dewberry and McDonald, testified that before agreeing to make the loan he called appellee over the telephone and explained to him that Dewberry and McDonald "wanted us—that is, Caldwell, Hughes & Patterson—to advance to them $320 to make a cash payment on a certain tract of land which they were to buy from him. I asked Mr. Yarbrough if he was going to make McDonald and Dewberry a deed reserving a vendor's lien and look to that solely for his pay, and he said, 'That is the understanding.' I then said to him, 'We will send you a check for the money.'" Appellee's account of the conversation over the telephone was as follows:

"I did not tell Mr. Caldwell in the phone conversation that I was going to take a mortgage on any of the crops. I did not know what security they were taking to secure them for the money which they advanced, but I presumed they would take a mortgage. I did tell Mr. Caldwell in the phone conversation that I was going to retain a vendor's lien to secure the purchase money on the land, and that is all I said to him. I did not tell him that I intended to take a mortgage to further secure my debt. He did not ask me that question. If he had asked me I would have told him that I was going to do so."

November 30, 1912, appellee made and delivered to Dewberry and McDonald a bond in which, in consideration, it recited, of $300 paid to him by them and the execution and delivery by them to him of six promissory notes for $283.33, payable December 1, 1913, 1914, 1915, 1916, 1917, and 1918, respectively, he bound himself to convey to them a tract of 106⅔ acres, described by metes and bounds and as being situated in Henderson county. At the same time, to wit, November 30, 1912, Dewberry and McDonald, to secure the payment of the three of their notes maturing December 1, 1913, 1914, and 1915, respectively, and the interest as it accrued on the other three notes, made and delivered to appellee a mortgage on nine bales of cotton they expected to grow on the land during the year 1913, and on a like quantity they expected to grow thereon for each of the years 1914 and 1915. This mortgage was filed for registration on December 2, 1912.

December 25, 1913, the note due December 1, 1913, being unpaid, Dewberry and McDonald, in consideration of appellee's agreeing to extend the time for the payment thereof to December 1, 1914, to further secure the payment thereof and also the payment of the second of the six notes and "all matured interest," made and delivered to appellee a mortgage on their entire crops grown on the land during the year 1914. This mortgage was filed for registration January 6, 1914.

January 6, 1914, appellants for Dewberry and McDonald paid appellee on account of interest due on the notes $170.

This suit was by appellants against appellee to recover $195, the damages appellants alleged they suffered because of the conversion by appellee in October, 1914, they charged, of four bales of cotton covered, they alleged, by the mortgage made to them by Dewberry and McDonald. In both the justice court and the county court, to which the cause was appealed, judgment was rendered in favor of appellee. On the trial in the county court the record recites:

"It was agreed by the parties that the defendant C. R. Yarbrough got four bales of cotton raised by the negroes, McDonald and Dewberry, and that the cotton was raised on the land which defendant Yarbrough sold to them; that the four bales cotton averaged 500 pounds each and was of the value of seven cents per pound."

Simpson, Lasseter & Gentry, of Tyler, for appellant. Richardson & Watkins, of Athens, for appellee.

WILLSON, C. J. (after stating the facts as above). Notwithstanding it appeared from testimony that the mortgages from McDonald and Dewberry to appellants were made and duly registered as required by law before the time when said McDonald and Dewberry made the mortgages to appellee, and further appeared that the indebtedness of McDonald and Dewberry to appellants which the mortgages to them were made to secure was unsatisfied; notwithstanding the admission in appellee's pleadings that he had "taken charge of and converted four bales of cotton raised by said Dewberry and McDonald," and the agreement of the parties at the trial that appellee "got four bales of cotton raised by the negroes McDonald and Dewberry on the land which defendant Yarbrough sold to them," the trial court thought appellants were not entitled to recover as sought by them, unless appellee was in the attitude of being estopped by the conversation over the telephone, set out in the statement above, from claiming as against them a lien on the cotton superior to the lien they claimed. Therefore that court refused appellant's request to instruct the jury to find in their favor, and, instead, instructed the jury to find against them, unless they believed that in the conversation referred to appellee agreed or led appellants to believe he would not take a lien on the crops to be grown by McDonald and Dewberry during

the years 1913, 1914, and 1915 on the land he sold to them. Appellee insists, and the trial court doubtless thought, that he was the vendor of the crops, that the lien asserted by him was for the purchase price thereof, and therefore that his lien was superior to that of appellants, notwithstanding theirs was prior in point of time. Had it appeared that appellee was the vendor of the crops the view the trial court seems to have taken of the case would have been correct, for, as is said in 5 R. C. L. § 27, p. 404:

"Where a mortgage is given to cover after-acquired property it covers such property only in the condition in which it comes into the hands of the mortgagor. If that property is already subject to mortgages or other liens at that time the general mortgage does not displace them, though they may be junior to it in point of time. It attaches only to such interest as the mortgagor acquires; and if he purchases property and gives a mortgage for the purchase money the bill of sale which he receives and the mortgage which he gives are regarded as one transaction, and the prior mortgage cannot displace such mortgage for the purchase money."

[1-3] But appellee was not the vendor of crops to be grown on the land. He was the vendor of the land alone, and the indebtedness of McDonald and Dewberry to him secured by the mortgages was for purchase money of the land, and not of crops they contemplated growing thereon. League v. Sanger, 25 Tex. Civ. App. 347, 60 S. W. 898. This being true, no reason is apparent why, if valid, appellants' mortgages should not have been held to be superior to those of appellee. If they should have been, then the judgment should have been for appellants instead of for appellee. The question then is: Were the mortgages made to appellants valid? In Richardson v. Washington, 88 Tex. 339, 31 S. W. 614, the Supreme Court held, quoting the syllabus:

"When a mortgage is given on crops, not yet in existence, and to be grown on land to which the mortgagor has no lease at the time, equity will enforce the mortgage as a lien on the crops when they do come into the possession of the mortgagor, when their acquisition was contemplated at the time the mortgage was made."

As it cannot be doubted from testimony in the record that appellants and McDonald and Dewberry contemplated at the time the latter made the mortgages to the former that the latter would acquire from appellee the right to grow crops on the land he sold to them, and would grow crops thereon, it must be held that the mortgages to appellant were valid within the rule recognized by the Supreme Court. If they were, then they became a lien on the crops when grown, and entitled to enforcement as against the junior mortgages to appellee.

It follows we are of opinion the court erred when he refused to charge the jury to find for appellants. Therefore the judgment will be reversed, and judgment will be here rendered in appellants' favor against appellee for $140—the value of the four bales of cotton, averaging in weight 500 pounds each, at 7 cents a pound—together with interest thereon from April 20, 1915, at the rate of 6 per cent. per annum.