

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

JOHN BEN SHEPPERD
ATTORNEY GENERAL

August 11, 1955

Hon. J. Earl Rudder
Commissioner, General Land
    Office
Austin, Texas

             Opinion No. S-166

             RE: Rights of the State in
                 certain instances upon for-
                 feiture of a veteran's con-
                 tract of sale and purchase
                 under the Veterans' Land
                 Program.

Dear Mr. Rudder:

        You have requested an opinion on the following
questions:

        "1. In those cases where it becomes
necessary for the Veterans' Land Board to
forfeit a veteran's contract, and it is
found that the veteran has executed a graz-
ing lease on that particular tract of land
with another party, what is the legal status
of that lease contract insofar as the Vet-
erans' Land Board is concerned.

        "2. Where a veteran has executed an
agricultural lease with another party to
operate the tract of land being purchased
through the Veterans' Land Program, and it
becomes necessary for the Board to forfeit
the veteran's contract, what is the status
of this lease contract and what rights ac-
crue to the Board as to ownership or poss-
ession of any crops growing on that land at
the time of such forfeiture? Your attention
is called to the fact that in no instance
does the Board become a party to any such
lease agreement by indicating their approval

or disapproval of such.

"3. In the case of oil and gas
leases which may have been executed on
land subject to forfeiture under the terms
of the veteran's contract, such leases be-
fore they become effective must be ap-
proved by the Chairman of the Veterans'
Land Board and filed in that office. Are
such oil and gas leases affected in any way
in the case of forfeiture of the veterans'
land contract?

"4. Where a veteran purchaser has a
growing crop on lands he is purchasing
through the Veterans' Land Program, and
has mortgaged all or a portion of such
crops, what rights accrue to the Veterans'
Land Board to participate in the yield
from such crops if forfeiture action be-
comes necessary?"

Article 5421m, Vernon's Civil Statutes, is com-
monly known as the "Veterans' Land Act." Section 17 pro-
vides, in part:

"The sale of all lands hereunder by
the Board may be properly initiated by con-
tract of sale and purchase, and said con-
tract shall be recorded in the deed records
in the county where the land is located.
The purchaser shall make an initial payment
of at least five (5%) per cent of the sell-
ing price of the property. The balance of
said selling price shall be amortized over
a period to be fixed by the Board, but not ex-
ceeding forty (40) years, together with interest
thereon at the rate of three (3%) per cent per
annum! . . . no property sold under the pro-
visions of this Act shall be transferred, sold
or conveyed, in whole or in part, until the
purchaser has enjoyed possession for a period
of three (3) years from the date of purchase
of said property and complied with all the
terms and conditions of this Act and the rules
and regulations of the Board; provided, how-
ever, that property sold under the provisions

of this Act may be transferred, sold, or conveyed at any time after the entire indebtedness due the Board has been paid. When the entire indebtedness due the State under the contract of sale is paid, the Chairman of the Veterans' Land Board shall execute a deed under its seal to the original purchaser of the land, which deed shall inure to the benefit of the legal owner of said land."

Section 18 provides:

"If at any time, while the veteran is indebted to the Board for the land purchased, he should execute, or there is in existence, an oil, gas and mineral lease covering such land, or any part thereof, at least one-half (1/2) of all bonus money received as consideration and one-half (1/2) of all delay rentals paid under such lease and one-half (1/2) of all royalties received (or so much thereof as may be required) shall be paid to the Board by the owner of said lease and applied by it toward the satisfaction of said indebtedness. The lease made by the veteran will be of no force or effect until the Board has received its portion thereof, as herein provided."

Section 19 provides for the forfeiture of the contract of sale and purchase in the following manner:

"In the event that any portion of the interest or principal on any sale should not be paid when due, the contract of sale and purchase shall be subject to forfeiture by the Board, and such forfeiture shall be effective when the Board shall have met and passed a resolution directing the Chairman of the Board to endorse upon the wrapper containing the papers of said sale, or upon the purchase contract filed in the Land Office, the word 'forfeited,' or words of

similar import, with the date of such action, and to sign officially; thereupon the lands and all payments theretofore made shall become forfeited. A notice of the action of the Board in forfeiting the original contract shall be mailed to the County Clerk of the county where the land is located, and the said Clerk shall enter on the margin of the page or pages containing the record of the original contract, a notation of such forfeiture. Lands included in such forfeited contract shall be subject to resale under the same terms and conditions as though said lands had not theretofore been sold. In any case where the sale has been forfeited and the title to the lands revested in the Veterans' Land Fund, the original purchaser or his vendee shall have the right to reinstate his claim in the purchase contract at any time prior to the date on which the Board shall have met and ordered the said lands to be advertised for resale, or for lease for mineral development, but not thereafter. . . ."

The forfeiture of a defaulting veteran's contract of sale and purchase is one of the few instances in which formal resolution by the Board is required. Unlike many other duties of the Board which can be delegated to the Commissioner of the General Land Office, the forfeiture of a contract of sale and purchase cannot be so delegated.

Section 21 provides:

"The Board is hereby authorized and empowered to make and promulgate such rules and regulations under this Act as they shall deem to be necessary or advisable, and to enforce the same. It shall likewise have the power to prescribe the form and contents of all notices, bids, applications, awards, contracts, deeds, or instruments whatsoever in any manner used by it in so carrying out such project and plan when the same shall not be in conflict with law. The Board is hereby made the sole judge of forfeiture of any purchase contract under this Act, and anyone

availing of the provisions of this Act
shall by so doing agree to abide by the
same; and should the Board declare a for-
feiture under said purchase contract,
then the purchaser hereby agrees to vacate
the premises within thirty (30) days after
receipt of notice of such declaration."

The questions you have asked presuppose that the
transactions with reference to the veteran and his lessee
occurred subsequent to the execution of the contract of
sale and purchase between the veteran and the State and
before forfeiture by the Board for legal cause. It is as-
sumed, also, that the veteran's claim has not been rein-
stated.

Not only the Veterans' Land Act, but as well
the contract of sale and purchase of record in the county
clerk's office, puts on notice anyone who deals with the
veteran, that the contract is subject to forfeiture so
long as there remains unpaid any portion of the interest
and principal due on the contract. Thus, there is miss-
ing one of the three elements essential to a bona fide
purchase, namely, absence of notice. Therefore, the life
of any type of lease contract, except an oil, gas and
mineral lease as particularly provided for in Section 18,
entered into between the veteran and his lessee, is de-
pendent upon the veteran's keeping current his obligations
under his contract of sale and purchase.

From a reading of the foregoing quoted sections,
it will be noted that the procedure for the contract of
sale and purchase of land to a veteran, together with the
conditions attached thereto, including the forfeiture
provisions, is rather definite and comprehensive. Appar-
ently, the legislature patterned the forfeiture provisions
after earlier laws authorizing forfeiture of sales of the
public lands under certain circumstances.

In Lawless v. Wright, 86 S.W. 1039 (Tex.Civ.App.
1905), it was said:

"It is the settled law that the State
of Texas has the power and authority to for-
feit, through a declaration of the Land Com-
missioner, a sale of its lands, for the non-
payment by the vendee of the interest on the

> purchase money. Such being the law, the
> act of the Land Commissioner in forfeit-
> ing the purchase of the land by Fancher
> had the effect of restoring such land to
> the public domain of the state . . . After
> the forfeiture the land assumed the same
> status that it occupied before the sale to
> Fancher, and the State clearly had the right,
> which it exercised, of placing the land on
> the market again and selling it. . . ."

If the veteran's contract of sale and purchase is forfeited, there can be no claim of right in anyone holding under him. Fristoe v. Blum, 92 Tex. 76, 45 S.W. 998 (1898).

You are advised, therefore, in answer to your first question, that the grazing lease referred to expires and is of no further force and effect from and after forfeiture.

The answer to your second question depends on the particular facts involved at the time of forfeiture. Strictly speaking, under the contract of sale and purchase, the State is the owner of the legal title and the veteran is the owner of the equitable title. The veteran is entitled to possession and he is not prohibited under the Veterans' Land Act from leasing the land for grazing or agricultural purposes. Although the land is not held subject to a vendor's lien as such, yet it is subject to forfeiture and repossession. The same principles of law governing the vendor and purchaser in an ordinary transaction involving the sale of land and the retention of the vendor's lien likewise apply to the contract of sale and purchase between the State and the veteran.

Where the land is held subject to a vendor's lien, the lien debtor until title has been divested by foreclosure, is entitled to effect a constructive severance of crops growing on the land, and thus prevent them from passing to the purchaser at a foreclosure sale. Willis v. Moore, 59 Tex. 628 (1883); Bowers v. Bryant Link Co., 15 S.W.2d 598 (Tex.Comm.App.1929).

The lien of a vendor of land does not extend to growing crops. League v. Sanger Bros., 60 S.W. 898 (Tex. Civ.App.1901). One who takes a mortgage on crops to be grown by the purchaser has a right which is superior to

any claim on the part of the vendor or a purchaser at a foreclosure sale to enforce the vendor's lien. <u>Caldwell, Hughes & Patterson v. Yarborough</u>, 186 S.W. 350 (Tex.Civ. App.1916), <u>League v. Sanger Bros</u>., supra.

A tenant is entitled to his share of the crops grown on the land. In <u>Brown v. Leath</u>, 42 S.W. 655 (Tex. Civ.App.1897, error ref.) (conclusion of facts in 44 S.W. 42), the court said:

> ". . . The lessee had, under his lease, cultivated the land; and at the time of the sale the crop of cotton and corn was maturing, and some of it matured. The lease severed the right to the rents from the realty, and the sale of the land under the deed of trust did not carry the title to the rents, or the crop on the premises standing at the date of the sale, wheth-er mature or not. The lessee had the right of ingress and egress for the purpose of gathering and preparing the crops for market or use. This is no longer an open question in this state. (Citing <u>Willis v. Moore</u>, supra, and other cases). The fact that the tenant had notice of the mortgage by its record is immaterial. It is the right of the mortgagor, before foreclosure, to sever the rents from the reversion. In this case it was done by granting the lease. . . ."

In <u>Dinwiddie v. Jordan</u>, 228 S.W. 126 (Tex.Comm. App.1921), the court said:

> "The doctrine of emblements is the com-mon law right of tenant, whose lease of un-certain duration has been terminated without his fault and without previous knowledge upon his part, to enter upon the leased premises to cultivate, harvest, and remove the crops planted by him before the termination of the lease."

The court, in the same case, supra, quoted the Supreme Court of Indiana as follows:

> "In order to entitle one claiming to be a tenant, or his legal representative, to emblements, the following facts must

appear: (1) The existence of a tenancy
of uncertain duration. (2) A termination
of the tenancy by the Act of God or by
the act of the lessor. (3) That the crop
was planted by the tenant, or someone
claiming under him, during his right of
occupancy."

In the second question posed, the veteran has
leased the land for agricultural purposes. The tenancy
is in existence and is of uncertain duration because it
is subject to termination by forfeiture of the veteran's
contract of sale and purchase by the action of the Board.
Secondly, the tenancy has been terminated by forfeiture
which is the result of the landlord's (veteran's) act in
not performing his part of the contract of sale and pur-
chase. Thirdly, the tenant's crop has been planted by
him, or someone claiming under him, during his right
of occupancy. Therefore, your second question is an-
swered as follows:

Where a veteran has executed an agricultural
lease to another party and the veteran's contract of sale
and purchase is forfeited by the Board, the lease is termi-
nated; however, the tenant is entitled to his share of
the crops. The State is entitled to receive the land-
lord's (veteran's) portion of the rent provided the land-
lord's (veteran's) portion has not been severed previously,
either actually or constructively, by the landlord
(veteran) prior to the forfeiture. We shall not attempt
in this opinion to cover fully the matter of what consti-
tutes a constructive severance, but we will note that
a sale or mortgage of the crops is a constructive sever-
ance. Willis v. Moore, supra; Bowers v. Bryant Link Co.,
supra.

The answer to your third question is in the
negative. The status of an oil and gas lease executed
pursuant to the terms of Section 18 is not changed by for-
feiture except to the extent that the State thereafter
would be entitled to receive all annual delay rentals and
royalties.

In Willis v. Moore, supra, the court said:

". . . As, however, the crops are separate
and distinct in their nature from the land upon
which they grow, the ownership of the one, even

on mortgaged property, may be in one person, and the title to the other in another; and whenever crops growing or standing upon land covered by a lien given by the owner of the land, or acquired by law, have in law or in fact been severed in ownership, or actually severed from the land prior to sale of the land under the lien, title thereto will not pass by the foreclosure of the lien.

"A mortgagor is entitled to sever in law or fact the crops which stand upon his land at any time prior to the destruction of his title by sale under the mortgage; this results from his ownership and consequent right to the use and profits of the land, . . ."

You are advised, in answer to your fourth question, that if a veteran purchaser has mortgaged all or a portion of the crops growing on lands he is purchasing through the Veterans' Land Program, no rights accrue to the State to participate in the yield from such crops if forfeiture action becomes necessary, except to the extent only of the portion of crops which has not been severed, either actually or constructively, prior to forfeiture.

## SUMMARY

A grazing lease executed by a veteran purchaser under the Veterans' Land Act expires and is of no further force and effect from and after forfeiture of the veteran's contract of sale and purchase.

An agricultural lease executed by a veteran purchaser to another party is terminated by forfeiture of the veteran's contract of sale and purchase; however, the tenant is entitled to his share of the crops and the State is entitled to the veteran's portion of the rent provided the veteran's portion has not been severed previously, either actually or constructively, by the veteran prior to forfeiture.

The status of an oil and gas lease executed by the veteran and approved by the Chairman of the Veterans' Land Board is not changed by forfeiture except to the extent that the State thereafter is entitled to receive all annual delay rentals and royalties.

If a veteran purchaser has mortgaged all or a portion of the crops growing on lands he has contracted to purchase through the Veterans' Land Program, no rights accrue to the State to participate in the crops after forfeiture except to the extent of the portion of crops which has not been severed prior to forfeiture.

Yours very truly,

JOHN BEN SHEPPERD
Attorney General

By J. A. Amis, Jr.
Assistant

APPROVED:

Mary K. Wall
Reviewer

John Davenport
Reviewer

Will D. Davis
Special Reviewer

Davis Grant
Special Reviewer

John Atchison
Acting First Assistant

John Ben Shepperd
Attorney General

JAA:bt