## WILLIAM WOOTTON v. J. O. WHEELER.

Mortgaged property is liable to be sold under an execution against the mortgagor, subject to the lien of the mortgage, although it contain a power authorizing the sale of the property, by a trustee, upon default of payment by the mortgagor.

APPEAL from Gonzales. Tried below before the Hon. Fielding Jones.

This was a proceeding by the appellee, for the trial of the right of property in two negroes, levied upon by virtue of an execution in favor of the appellant, against William Means. The execution was levied on the 6th of March, 1858; and the sheriff's return showed that the negroes were found by him upon the plantation of the defendant in execution.

The appellee filed his bond and affidavit, for the trial of the right of property, on the 1st of April, 1858, and asserted his claim to the negroes, under a deed executed on the 18th of October, 1856, by the defendant in execution, William Means, of the first part, William F. Mitchell, of the second part, and the appellee, of the third part, whereby Means conveyed the two negroes now in controversy, together with some others, to Mitchell; in trust to secure the payment to Wheeler, (the appellee) of a note for $7,180, executed by Means to him on the 9th of May, 1856, and payable May 9th, 1857, whereby it was stipulated, that if Means should pay the said sum of money in said note, when the same became due, the said deed of conveyance should be void; but if not paid, "and said party of the third part (appellee) shall desire and request it, said Mitchell shall sell," &c.

On the 5th of October, 1858, by leave of the court, Mitchell made himself a co-claimant, and asserted title to the negroes, under the said deed, and for the purpose of carrying into effect its stipulations.

Upon the trial, the court instructed the jury as follows: "If you find that the negroes, Edmund and Gus, are the

"negroes mentioned in the deed of trust executed by Means "to Mitchell, to secure Wheeler in a debt due from Means to "Wheeler, then you should find that they are not subject to this "execution; for we charge you, the deed of trust so executed would "vest in the trustee such title, as would prevent the property "from being taken in execution." There was a verdict and judgment for the claimants, from which the plaintiff in execution appealed.

*Harwood* and *Mills*, for appellant.

*Stewart*, for appellee. The trust deed, in this case, vested the legal title in Mitchell, clothing him with power of sale; and the note having matured, the trustee had, at the time of levy, the legal title, with right to possession of the slaves, for the purpose of perfecting his trust, and the equitable title was in the *cestui que trust*, Wheeler. The case of mortgage differs with us; for then the legal title is in the mortgagor, which is subject to execution. The case cited in appellant's brief, (Wright v. Henderson, 12 Tex. Rep. 43,) was one in which the trust deed did not, probably, vest the legal title and possession in the trustee, with power of sale; and probably, in that case, the note had not matured, and the contingency had not happened, on which depended the legal title. The amount due Wheeler, as appears by the note, was much more than the entire appraisement of the two negroes. (McGee v. Currie, 4 Tex. Rep. 217.)

WHEELER, CH. J. The appellee asserted his claim to the property, under the deed of the 18th of October, 1846. That instrument is but a mortgage, with a power to sell added thereto. (4 Kent's Com. 146; 16 Tex. Rep. 474.) And it is the settled law of this state, that mortgaged property is liable to execution against the mortgagor, subject to the lien created by the mortgage. (Gilliam v. Henderson, 12 Tex. Rep. 47; Bullard v. Anderson, 18 Id. 377.) The mortgagee was not entitled to hold the property, exempt from liability to be taken and sold, subject to his lien, under execution against the mortgagor. The

present cannot be distinguished from the case of Wright v. Henderson, 12 Tex. Rep. 43; and Gilliam v. Henderson, Id. 47. Upon the principle of these cases, the claimant manifestly had no cause of action. And as the objection goes to the foundation of the action, the judgment must be reversed and the cause dismissed.

Reversed and dismissed.