## R. S. WILLIS v. LEWIS MOORE, ET AL.

SUPREME COURT, AUSTIN TERM, 1883.

*Mortgage---Ungathered Crops.*---A mortgage being simply a lien to secure the payment of a debt, it cannot be held to give to a mortgagee or person purchasing under it any greater right to ungathered crops standing upon the mortgaged land than would a person have who purchased under a lien acquired in any other manner, prior to the time the crops are planted, or the right to plant is acquired.

*Right of Mortgagor to Crops.*---A mortgagor is entitled to sever, in law or fact the crops which stand upon his land at any time prior to the destruction of his title by sale under the mortgage. This results from his ownership and consequent right to the use and profits of his land, and the mortgage is taken with a knowledge of this fact.

Appeal from Falls County.

*Goodrich & Clarkson* for appellant.

*Clark & Dyer*, for appellee.

Opinion by Stayton, J.

The deed in trust made by Lewis Moore to secure the note executed by him to Reed and Smith having been duly recorded, it must be held that A. J. Gill bought the interest of Lewis Moore in the crop upon the land on the 1st of August, 1881, with notice of whatever right the appellant, by virtue of the transfer of the notes which carried with them as an incident, the security evidenced by the trust deed, had in the crops then standing ungathered upon the land. There might be some difficulty in determining the true relation which existed between Lewis Moore and A. J. Gill, under the agreement of date Dec. 24th, 1877; but is treated by appellant's counsel as a partnership, in which, for their mutual benefit, the land was cultivated by the latter, the material for that purpose being in part furnished by each, the net proceeds to be equally divided between them.

This is probably the true relationship of the parties, rather than that, they were landlord and tenant, and we will so consider them in disposing of the case.

It does not appear when the notes to Reed and Smith matured, but it is found that they were due and unpaid on the 8th of September, 1881, at which time the substituted trustee sold the land, and thereby the appellant became the owner thereof. The question for our decision then is: Is the purchaser of mortgaged lands as against

the mortgagor, or any person claiming under him by a purchase of the crops, entitled to such crops as were standing ungathered upon the land at the time of his purchase ?

A. J. Gill does not necessarily stand in the same relation to this question as would Lewis Moore, were he the claimant. That in England, and in many of the States of the Union, the mortgagee is deemed the holder of the legal title, cannot be questioned; and that upon such title he may maintain ejectment against the mortgagor. And where such is the rule, many decisions are to be found, in which it is held, that neither the mortgagor nor a tenant under him, claiming through a lease made after the execution of the mortgage, is entitled to carry away the crops growing upon the mortgaged land at the time of foreclosure, or actual entry by the mortgagee; and this, upon the theory that from the date of the mortgage the mortgagor is but a tenant at sufferance; and that a lease made by him, being unauthorized, makes a disseizin.

In the case of Lane v. King, 8 Wendell, 585, which is a leading case in America, the rule and reasons therefor are thus illustrated : "In Keech v. Hall, Douglass, 21, already referred to, the mortgagee brought an action of ejectment against a tenant, who claimed under a lease from the mortgagor, given after the mortgage, without the privity of the mortgagee. Lord Mansfield in delivering the opinion of the court, said : "On full consideration we are all clearly of opinion, that there is no inference of fraud or concert against the mortgagee to prevent him from considering the lease of the mortgagor, as a wrong-doer. The question turns upon the agreement between the mortgagor and mortgagee; when the mortgagor is left in possession, the true inference to be drawn, is an agreement that he shall possess the premises, at will, in the strictest sense, and therefore no notice is ever given to quit, *and he is not even entitled to reap the crop as other tenants at will are, because all are liable to the debt, on payment of which the mortgagee's title ceases. The mortgagor has no power express or implied, to let leases not subject to every circumstance of the mortgage; the tenant stands exactly in the situation of the mortgagor.* This court in McKercher v. Hanley, 16 Johns, R., 292, also held that the relation subsisting between the mortgagor and mortgagee did not imply a right on the part of the mortgagor to lease. The mortgagor, therefore, in giving a lease becomes as to the mortgagee a disseizor      *       *             *       *

The mortgagee undoubtedly, as against the mortgagor and his grantees, has the paramount right. Mr. Powell considers the rights of mortgagee to emblements as against the lessee of the mortgagor, as necessarily resulting from the doctrine established by Lord Mansfield, in Keech v. Hall, Doug., 21, and that a mortgagor has no right to lease. He observes that he can see no ground on which the case of such lessee, as to emblements, can be distinguished from any other tenant under a *tortious title;* for if he be considered a wrong-doer as to his occupation of the premises, he cannot be considered in a different character as to emblements, nor can there be any ground to imply a consent to cultivate the property, when no implication is admitted to a consent to occupy it." In the case of Keech v. Hall, 1 Doug., 23, in reply to a suggestion that the tenant of a mortgagor was entitled to emblements, Lord Mansfield said : "I give no opinion upon that point; but there may be a distinction, for the mortgagor may be considered as receiving the rents in order to pay the interest by an implied authority from the mortgagee, till he determine his will, as to the lessees right to reap the crop which he may have sown previous to the determination of the will of the mortgagee; that point does not arise in this case, the ejectment being for a warehouse, but, however that may be, it would be no bar to the mortgagee's recovering in ejectment. It would only give the lessee a right of ingress and egress to take the crop; as to which, with regard to tenants at will, the text of Littleton is clear." In this State it has been held, from an early day, that a mortgage is but a security for a debt; that the title to property mortgaged remains in the mortgagor, and with it the right of possession which is one of the ordinary incidents of title. Duty v. Graham, 12 Tex., 427 ; Wright v. Henderson, 12 Tex., 44; Wooten v. Wheeler, 22 Tex., 338. Such being the legal effect of a mortgage in this State, it will be readily seen that, the foundation upon which the rights of mortgagees is based in England and in some of the States, wholly fails. 1st, there the *paramount* title is held to be in the mortgagee; here the *paramount* title remains in the mortgagor, and no estate passes to the mortgagee unless through foreclosure. 2nd, There the right to the immediate possession of the mortgaged property vests in the mortgagee, with the consequent right to appropriate the fruits and revenues without liability to account, unless called upon to do so in a proceeding to enforce the equity of redemption ; here, no

right to the possession, nor to the fruits and revenues so long as the mortgage stands unforeclosed, unless under some proceeding peculiarily equitable.

3rd. There, the mortgagor, under the conflict of authority, is held to be either a tenant at sufferance or a tenant at will, with no power to do aught else than under the strict rules of the common law, a tenant with the feeblest tenure may do; a lease by him operating as a disseizin of the mortgagee, and making himself and his lessee tort feasors; here he is the owner of the fee, if such be his estate in the land which he mortgages; recognizing no landlord; neither a tenant at will, nor a tenant at sufferance, in any sense in which these terms can be legitimately applied; for the owner cannot be, in the nature of things, the tenant of any one; he has power to lease without disloyalty to any one, his lease if made after mortgage, subject however, to be terminated in case of foreclosure before its expiration.

The reason sometimes given, why a mortgagor should not be permitted to have the crops still standing upon the land at time of foreclosure is: That he may obtain their value in account upon bill to redeem; with us this reason can have no effect for there is no such thing in our practice as the right to redeem after foreclosure, which is made by sale. The crops were planted, cultivated, and in fact must have been almost, if not quite matured, before the sale in September, and while the *paramount* title to the land upon which they grew was still in Moore, the vendor of Gill, Moore sold them. The element of uncertainty, in so far as Gill was concerned, as to the continuance of title in his vendor, was very nearly as great as though he had held as tenant at will. The direction of the creditor to sell under the deed of trust, and thereby place in himself or some other person the title to the land, was an act of will, without the exercise of which the paramount title to the land would continue in Moore; and even such exercise of the will would not necessarily affect that result; for Moore might be able to pay the indebtedness and thereby effectually prevent the divestiture of his title. Where the mortgage is held to vest the title in the mortgagee, no such elements of uncertainty exist; he may enter whenever he pleases. The right of a person purchasing under a foreclosure of a mortgage, where it is held that the mortgage passes no estate, but is a mere security, to have the crops on the land at time of foreclosure, is questioned by Mr. Washburn, 1 Washburn on Real Property, 124.

The reasons for the rule in question not existing here it seems to us the rule must be held not to exist. The deed of trust seems to evidence the fact that the parties contemplated, even if sale was made under it; that Moore and those claiming under him should not at once surrender the land to the purchasen, but from the time of the sale should attorn to the purchaser; which carries with it by implication, at least an agreement that from such time Moore or his assigns should as tenants recognize the purchaser as the landlord and pay rent for the land from the time of foreclosure. By attornment is meant "the act of recognition of a new landlord, implying an engagement to pay rent and perform covenants to him. The word is taken from the feudal law, where it signifies the transfer by act of the lord and consent of the tenant of the homage, service, fealty, &c. of the tenant to a new lord who had acquired the estate." Abbott's Law Dictionary. It is true that the trust deed provides that the holding shall be as tenant at sufferance; but there can be no such thing as tenant by sufferance when the tenancy is the result of agreement, such as is found in the trust deed, with reference to which the purchaser must be presumed to have bought, and by which he is as much bound as though he had been a party to that instrument; and in the absence of something in the agreement, evidencing that it was the intention of the parties after the foreclosure, to have their rights to stand strictly upon the relation of landlord and tenant at sufferance, the parties should be held to have intended that such a tenancy should exist as is created by agreement, at least a tenancy at will, which would carry with it the right to the crops then nearly or quite matured, lest wrong attend at time of foreclosure.

A tenancy by sufferance " is of such a nature as necessarily implies an absence of *any agreement* between the owner and the tenant, and if express assent is given by the owner to such possession, the tenancy is thereby *instanter* converted into a tenancy at will, or from year to year, according to the circumstances." Woods' Landlord and Tenant, 15. It matters not what parties may designate such a tenancy. This view of the case would be conclusive of the question, but there is another view of the case which is equally so. A mortgage being simply a lien to secure the payment of a debt, it cannot be held to give to a mortgagee or person purchasing under it any greater right to ungathered crops standing upon the mortgaged land than would a person have who purchased under a

lien acquired in any other manner, prior to the time the crop is planted, or the right to plant it accrued. Hogsett v. Ellis, 17 Michigan 363.

"Crops, whether growing or standing in the field, ready to be harvested, are, when produced by annual cultivation, no part of the realty. They are, therefore, liable to voluntary transfer as chattels. It is equally well settled that they may be seized and sold under execution." Freeman on Executions, 113, and citations; Benjamin on Sales, 120.

Such being the case, if there be nothing in the contract of the parties by which land is conveyed, nor in the circumstances attending the sale, evidencing the intention of the parties, that crops nearly or quite matured should pass with land sold, it is difficult to see upon what principle it can be held, that property strictly personal in its character should pass by an instrument which upon its face purports only to convey land. The weight of authority, however, is to the effect that such crops will pass by the sale of the land if they belong to the owner of the land at the time of sale. The application of this rule to sales made under mortgages, having only such effects as mortgages here are held to have upon crops produced many years after the mortgage was given, need not further be considered. As, however, the crops are separate and distinct in their nature, from the land upon which they grew, the ownership of the one, even on mortgaged property, may be in one person and the title to the other in another, and whenever crops growing or standing upon land covered by a lien given by the owner of the land, or acquired by law, have in law or in fact been severed in ownership, or actually severed from the land prior to sale of the land under the lien, title thereto will not pass by the foreclosure of the lien. A mortgagor is entitled to sever in law or fact the crops which stand upon his land at any time prior to the destruction of his title by sale, under the mortgage; this results from his ownership and consequent right to the use and profits of his land, and the mortgage is taken with knowledge of that fact.

In the case of Meyers' assignees v. White, 1 Rawle 355, it appeared that Meyer had executed a mortgage upon a tract of land, subsequent to which he had a crop upon the land which with the land he assigned for the benefit of his creditors. There was subsequently a sale under a foreclosure of the mortgage, and the pur-

chaser at that sale of the land claimed the crop, and it was held that the crop passed to the assignees, and not to the purchaser under the foreclosure of the mortgage, and this upon the ground that the crops by conveyance to the assignees had been severed. The court said: "As there is no difference in this respect between a judgment and a mortgage creditor, this case has been virtually decided in Hambuch v. Yeates, not yet reported, in which it was held, that grain growing in the ground is personal property, and might be levied upon and sold as such, and that it did not pass by a sale to the sheriff's vendee, Peter Meyers, before judgment on the *scire facias*, had parted with his interest in the crop at the time of the sale, all his right was vested in his assignees for the benefit of his creditors."

In the case of Stambaugh v. Yeates, 2 Rawls 161, Yeates had recovered a judgment against Kyrne and caused a fieri facias to be levied upon his land and returned, after which the land was sown in grain and another creditor caused a levy to be made upon the grain under a judgment which he had obtained, and the grain was sold, afterwards the land was sold under a *venditioni exponas*, and it was held that the creditor who levied on the grain was entitled to the proceeds.

These cases are approved and applied in Bear v. Bitzer, 16 Penn. St. 178, and in Groff v. Levan, Ib. 177. All of these cases, as well as the case of Bettinger v. Baker, 29 Penn. St. 70, were considered in the case of Hershey v. Metzgar, 90 Penn. St. 218, and were received and approved, and referring to the case of Bear v. Bitzer the court says: "The latter case rules that a purchaser of land at sheriff's sale is entitled to the growing grain thereon, which had not been severed before the sale. There the owner of the land which was sold owned the crop, and there had been no act of separation. The test is, whether there has been a severance of the growing grain; if so, it does not pass to him who purchases the land subsequent to the severance; if not, it goes with the land." All these cases recognize a sale by the owner or by judicial process if made before the sale of the land as a severance.

The court of appeals of Maryland, in Purner v. Piercy, 40 Maryland 223, in speaking of what constitutes severance, say: "There is nothing in the vegetable or fruit which is an interest in, or concerning land, when severed from the soil, * * * whether grain, vegetables

or any kind of crop (*fructus industriales*) the product of periodical planting and culture; they are alike mere chattels, and the severance may be in fact, as when they are cut and removed from the ground, or in law, as when they are growing, the owner in fee of the land, by a valid conveyance sells them to another person, or when he sells the land, reserving them by an express provision."

To the same effect is the case of Titus v. Whitney, 1 Harrison 85. In Buckout v. Swift, 27 Cal. 443, it was held that a house which stood on mortgaged land, but which was severed from the land subsequently by a storm, did not pass by the sale under foreclosure.

There is no error in the judgment and it is affirmed.