## COLONIAL LAND & LOAN CO. v. JOPLIN. (No. 7393.)

(Court of Civil Appeals of Texas. Galveston. May 22, 1917. Rehearing Denied June 14, 1917.)

1. ESTOPPEL ⊕⇒91(1)—GROUNDS.

Where an order for foreclosure sale of property of a nursery company ordered the sale of lands and nursery stock to be made separately, and that the sale of the lands must be made subject to the right of the mortgagor to remove the nursery stock at any time, the plaintiff, by excepting to the court's order and preserving to itself the right to assert the claim in a different proceeding, agreed that the title of the nursery stock should not pass by the sale of the land, and acquiesced in the provision in the order that the mortgagor might remove it from the land.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 257.]

2. APPEAL AND ERROR ⊕⇒82(5)—FORECLOSURE—REVIEW—JUDGMENTS APPEALABLE.

The order of the court that the lands and nursery stock thereon be sold separately in effect decided that the nursery stock was personal property, and determined the rights of the parties, and hence was a final and appealable judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 479.]

3. MORTGAGES ⊕⇒579 — FORECLOSURE — REVIEW—QUESTIONS CONCLUDED.

A decision on appeal that the plaintiff in the foreclosure proceedings, who purchased the lands, could not enjoin the removal of such stock, which he had expressly agreed might be done, does not involve or decide whether the nursery stock was in fact personal property.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1656.]

4. MORTGAGES ⊕⇒491—RIGHT OF MORTGAGOR TO SEVER PERSONALTY—EXERCISE BY COURT.

Where mortgagor was entitled to sever personal property on the land, the court may cause such severance in foreclosure proceedings against the land.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1434–1437.]

5. MORTGAGES ⊕⇒133—LIEN—NURSERY STOCK.

If it was not intended by the parties, in giving and accepting trust deeds, that nursery stock on land conveyed should become a permanent acquisition to the soil, such stock would be personalty, and would not be affected by lien of trust deed.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 260, 264, 265.]

6. MORTGAGES ⊕⇒133 — LIEN — NURSERY STOCK.

Under the rule that annual crops, whether growing or ready for harvesting, are regarded as personal property, and are not subject to a mortgage which does not specifically include them, and that they may be severed by the mortgagor at any time prior to destruction of his title by sale, nursery stock on land conveyed by trust deed, which had no value unless transplanted and sold annually, was personal property, and not subject to the lien of the trust deed, although such stock could in fact remain in ground longer than one year.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 260, 264, 265.]

7. MORTGAGES ⊕⇒186(5) — LIEN — EVIDENCE—SUFFICIENCY.

On intervention in receivership proceedings by a mortgagee, who was purchaser at foreclosure proceedings, to secure the application of the proceeds of the sale of nursery stock on the mortgaged land to the balance of his foreclosure judgment, evidence held to show that it was the intention of the parties that such nursery stock should remain personal property.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Suit by the Colonial Land & Loan Company against Paul W. Joplin, receiver of the Alvin Japanese Nursery Company. Judgment for defendant, and plaintiff appeals. Affirmed.

See, also, 184 S. W. 537.

Bryan & Bryan, of Houston, for appellant. Sam Bradley Fogle, of Houston, for appellee.

GRAVES, J. Appellant Loan Company, on July 5, 1915, became, through purchase and assignment, the successor to the Lumberman's National Bank of Houston in the ownership of a judgment rendered by the trial court against appellee Joplin, as receiver of the Alvin Japanese Nursery Company for over $29,000, secured by long-standing deed of trust liens upon the lands of that company upon which its nursery and nursery stock was situated. As part of this judgment, foreclosure of the trust deed liens upon these lands had been ordered, and direction made that they be sold in due course of the receivership, and, after its purchase thereof, appellant Loan Company, after intervening in the receivership, asked the court to order a sale of the lands so covered by its judgment lien. This was done, and commissioners were first appointed to sell all the Nursery Company's property, both nursery stock and land together, at private sale; but the court refused to confirm a sale made in this manner, and later, on December 10, 1915, ordered the sale of the lands and the nursery stock to be made separately, that of the lands to occur on the first Tuesday in January, 1916, and to be made subject to the right of the receiver to remove the nursery stock at any time prior to March 1, 1916, thus in effect holding the nursery stock to be personal property, and not subject to the Loan Company's judgment lien upon the lands. The original liens, thus merged into the judgment lien by the foreclosure, had been given back in 1909 and in 1914, and covered the lands on which the nursery stock was then and at all material later times

---

situated, but did not specify nor make any reference to the nursery stock.

[1] In January, 1916, when these lands were sold under this order, appellant Loan Company bought them in on its judgment at a price which left a balance still due it on the judgment of something over $10,000. It had excepted to the court's order of December 10, 1915, separating the lands and the nursery stock and directing separate sales of each, and thereby preserved to itself the right to assert the claim, which forms the sole basis of this suit and this appeal therein, that the proceeds of the sale of the nursery stock should be subjected to its judgment lien and applied toward payment of the $10,000 balance due on the judgment. The Loan Company, however, in thus excepting to the order of December 10th, and so preserving its right in a different proceeding to press the claim involved in the case now at bar, had agreed that the title to the nursery stock should not pass by the sale of the lands, and had acquiesced in the provision therein that the receiver might remove it from the lands at any time prior to March 1, 1916; nor did it appeal from that order, but, after confirmation of the sale to it of the lands in January, 1916, it filed suit for an injunction to restrain the receiver from selling or removing the nursery stock, as per the recited provisions of the December 10, 1915, order. This court, in affirming the trial court's order refusing that injunction, said:

"In his order refusing the application for injunction the trial judge states that the injunction was refused because he was of opinion that the nursery stock was not a part of the realty, and therefore not subject to appellant's lien, but that, if it could be considered a part of the realty, the injunction should be granted. We think it clear that the injunction was properly refused, regardless of the question of whether appellant has a lien on the nursery stock to secure the payment of the balance of its judgment. The agreement of appellant, recited in the order of sale, before set out, that the title to the nursery stock should not pass by the sale of the land, and its acquiescence in the order of the court 'that the sale of the land upon which the nursery stock is situated shall be made subject to the right of the receiver or his assigns to remove the nursery stock at any time prior to March 1, 1916,' is a complete answer to appellant's claim of a right to enjoin the sale or removal of the nursery stock. Appellant cannot claim that the title to the nursery stock passed to it by its purchase of the land under the terms of the order of sale before set out. The only right that it preserved to itself in said order was the right to assert the claim that the proceeds of the sale of the nursery stock should be subjected to its lien, and it cannot, in violation of the terms of the order under which it purchased the land, enjoin the sale and removal of the nursery stock. If appellant was not satisfied with the terms of the order of sale, which required the land and nursery stock to be sold separately, and denied its claim of lien upon the nursery stock, it should have appealed therefrom. Having acquiesced in the order of sale, it is bound by its terms, and the receiver cannot be enjoined from selling or removing the nursery stock."

See Loan Company v. Joplin, 184 S. W, 538, 539.

After affirmance of the refusal of injunction against the sale, the nursery stock was sold by appellee Joplin as such receiver, pursuant to the order of December 10, 1915, for $2,050. Appellant Loan Company, by motion filed in the trial court under its intervention in the general receivership, then moved the court to authorize and direct appellee receiver to pay over this $2,050 to it, to be applied on the balance due on its judgment. That motion having been denied, the Loan Company duly perfected this appeal therefrom to this court.

[2] The first question presented is that raised by appellee as to the jurisdiction of this court to entertain the appeal. The suggestion is that the order overruling the motion was no such final judgment of the district court as might be appealed from, under Revised Statutes, arts. 2078, 2079. We overrule the contention, and hold that this court has jurisdiction. The judgment of the court, that appellant did not have a lien upon the nursery stock, and was therefore not entitled to the proceeds of the sale of same, was a final judgment, so far as this particular matter was concerned. The controversy was between the appellant and the appellee, as receiver; the judgment finally determined appellant's right, and we think it could be appealed from. Fagan & Osgood v. Bogle Ice Machine Co., 65 Tex. 324; Trust Co. v. National Bank, 89 Tex. 329, 34 S. W. 736.

Upon the merits of this appeal, the sole question presented for our determination is thus stated by the Loan Company in its brief as follows:

"By its two assignments of error the appellant raises the one and only question in the case; i. e., whether or not the nursery stock owned by the Alvin Japanese Nursery Company became and was such a part of the land in and on which the nursery stock was growing that it became subject to the appellant's deed of trust lien upon the land."

After a most careful consideration of the case, we conclude that the view of the learned trial judge was correct, and that the nursery stock was not such a part of the land as to become subject to the Loan Company's deed of trust lien.

[3] Neither can we agree with appellee that this question was decided upon the appeal from the order refusing the injunction above quoted from. Upon the contrary, a careful reading of that opinion and of the extracts from it above quoted will show that this court rested its decision of that appeal upon another ground; that is, that the Loan Company could not enjoin the doing of what it had expressly agreed might actually be done. While it thus expressly held unnecessary to the decision of that case the determination of the question now before us, the court did go on to discuss it in the following language:

"We deem it proper to say that, in our opinion, the question of whether the nursery stock on the land is subject to appellant's lien depends upon the intention of the parties at the time the trust deed was executed. * * *

"If the evidence justifies the conclusion that at the time the mortgage was executed it was contemplated by the parties that the mortgagor should have the right each year to sell the nursery stock without accounting to the mortgagee for the proceeds of such sales, and that this right had been exercised by the mortgagor continuously since the execution of the mortgage, we think it should be held that it was the ·intention of the parties that the nursery stock placed or grown on the land was to be regarded as personal property, and not subject to the mortgage. Hutchins v. Masterson, 46 Tex. 551, 26 Am. Rep. 286.

"It is a settled rule of decision in this state that crops grown upon land covered by a mortgage are personal property of the mortgagor, and not subject to the mortgage. Willis v. Moore, 59 Tex. 628, 46 Am. Rep. 284."

[4] In these last-quoted paragraphs we think this court not only stated the dominating considerations upon which, under our decisions, the character of the property here involved, whether real or personal, is to be determined, but also cited the two leading cases in which our Supreme Court authoritatively announced the rule that obtains in Texas. Whatever may be the rule in other jurisdictions, with us neither annual crops, whether growing or standing in the field ready for harvesting, nor anything else actually annexed to the land and not intended by the parties to its being put there to become a permanent accession to the freehold, constitute a part of the realty, but are regarded as personal property; and as such the title thereto remains in the maker of a mortgage upon the land, which does not by specific provision include them, and he may sever them in law or in fact at any time prior to the destruction of his title by sale under his mortgage. No sale under the mortgage, and therefore no extinguishment of the mortgagor Nursery Company's title, having occurred at the time the court, through the receiver, in September, 1914, took charge of and henceforth stood in its place as to its property, no good reason occurs to us as to why the court could not cause the severance in this instance, and thereby do the same thing the mortgagor might have done.

The first of the above-stated rules of law was declared by our Supreme Court in Willis v. Moore, 59 Tex. 628, 46 Am. Rep. 284, and the other in Hutchins v. Masterson, 46 Tex. 551, 26 Am. Rep. 286, supra, and both pronouncements are still the law in Texas, having been reaffirmed by that and other of our courts a number of times.

[5, 6] If, therefore, under the evidence and conditions shown here, it was not intended by the parties, in giving and accepting the trust deeds, that the nursery stock should become a permanent accession to the soil, or if it is to be considered as in the nature of a crop produced by annual labor, and consequently subject to the same rule of law, it was personalty, and not affected by the trust deed liens.

[7] That under both suppositions its character was fixed as personalty, we think, is quite free from doubt. There is really no dispute as to what the evidence was upon the question of the intention of the parties toward the nursery stock at the time the loans were made, but the viewpoints of the litigants here differ as to its effect.

Appellant contends that it shows an intention to make a permanent acquisition to the freehold by having a nursery stock as a whole or an entity in the land, which, despite the contemplated current sale from season to season in due course of the business of such part of it as was ready for the market, still as a fixture constituted it part of the realty. While, upon the other hand, the appellee insists that both Mr. Arai, of the Nursery Company, and Mr. Carter of the bank, intended and understood that the nursery stock should be sold and removed in the regular course of the company's business as a nurseryman, and that such mutually contemplated severance and use constituted its only value, since it would not only be without value if left permanently upon, but would also cause depreciation in the value of, the realty. Mr. Carter testified:

"We did not have any agreement with the Alvin Nursery Company, or any one representing it, that the nursery stock, or whatever was growing on the land, was not to be subject to our mortgage. Nothing was said that I know of. I do not think anything was said, because we naturally supposed that anything that is attached to the ground there is part of the real estate. We understood that, if he put nursery stock on there, he would be selling it out in the due course of business. * * * As I recall it, there was no agreement in regard to, or statement made as to what was to be done with, this nursery stock; but I just understood that the nursery business would be continued, and that they would be buying and selling and producing, and I supposed that whatever nursery stock was in the ground at the time our mortgage was foreclosed would be subject to the mortgage. Nothing was said about it on either side. We felt satisfied that the effect of our taking a mortgage was that way."

Mr. Arai testified:

"There is now on the ground very little of the nursery stock which was there at the time the mortgage was given to the Lumberman's National Bank. There was no agreement between me and the representative of the Lumberman's Bank, with whom the loan was negotiated, that the nursery stock should remain on the ground. There was no agreement as to whether or not the nursery stock could be sold in the regular course of trade, or anything of that kind. * * * Of course, if the trees remain permanent, it is not nursery stock. By nursery stock we mean we remove it as we sell it, but orchard trees, that means that it remains there, and when I spoke of nursery trees, always it was meant to sell it through the proper channels of business. In November there was about 75 per cent. of the stock could be sold to the retail trade, and about 90 per cent. or over to the wholesale trade. About 50 per cent. of the nursery stock had had the roots cut in November, 1915, and were simply setting in place there to be taken up when needed. If the nursery stock were left in exactly the same condition that it is

now, and nothing was sold off, but it was taken care of as it should be for another year, some of it would be unsalable—figs and peaches and plums and citrus trifoliata—by being left in the ground for another year. There would be a probable loss of 30 per cent. of the stock; that is, if it would be allowed to stay on the farm from November, 1915, until the next November. Taking care of it as it should be taken care of, but without selling any of it, the stock would be less valuable by 70 per cent. than it was in November, 1915. Nursery stock has no value unless it is transplanted and sold. If the nursery stock was left too long on the ground, and planted too close to grow in, it would be a detriment to the land, and it would have to be thinned out. These trees, planted too close together, won't do anything at all, and when we planted those in the nursery in rows, we intended to remove and sell them, and that is the regular way in which nursery stocks are handled."

How this nondiffering testimony from both sides to a common understanding, intent, and purpose could, under the above-stated rule of law, have any other effect than to fasten upon this property the character of personalty, rather than of realty, we find ourselves unable to understand; especially so, since it affirmatively appears that no restriction whatever was placed upon the mortgagor's right from time to time to sell the nursery stock, and, without accounting therefor to the mortgagee, to appropriate the proceeds to its own use and benefit. Nor do we deem the citation of further authority upon the point necessary; but it may not be inappropriate to say that we have become convinced that the broad rule upon this subject, as stated by Mr. Leonard A. Jones, in the fifth edition of his work on the Law on Mortgages of Real Property (volume 1, par. 434; p. 350), referred to by this court in the opinion above quoted from, and now relied upon by appellant as supporting its contention here, has not been followed in this state. And that the same rule of law applies to the nursery stock, under all the circumstances and conditions shown here, as does to crops produced by annual labor within the meaning of the rule stated in Willis v. Moore, we think is equally clear; nor do we think the mere fact that some parts of the stock, as, for example, the trees, are not so ephemeral as the ordinary annual crops, and may remain in the ground longer than one year, strips it of analogy to such crops; the fact nevertheless remains, and appears from the evidence quoted, that for the purpose of the nursery business the entire stock was quite short-lived, and, if allowed to stay in the ground for even one year beyond the intended time for its removal, would not only itself very greatly deteriorate in value, but would injure the land as well. It further appeared that it had no value unless transplanted and sold, and that in November, 1915, prior to the proceedings above recited relating to its sale, about 95 per cent. or more of the entire stock had so far matured that it could be sold in due course of the

nursery business to one class or the other of the trade; moreover, about 55 per cent. had been cut around the roots and left ready to be taken up when needed, leaving only about 45 per cent. of the whole undisturbed and still growing in the ground at that time.

Under these facts, we think the same reasons given by the courts for holding matured crops, ungathered and ready for the harvest, personal property, also apply with equal force to this nursery stock. Silberberg v. Trilling, 82 Tex. 523, 18 S. W. 591; Ellis v. Brigham, 150 S. W. 602; Heckt v. Dettman, 56 Iowa, 679, 7 N. W. 495, 41 Am. Rep. 131. The conclusions stated necessitate the overruling of both assignments and an affirmance of the judgment; and it is so ordered.

Affirmed.