## ROBERTS et al. v. ARMSTRONG.
### (No. 225-3393.)

(Commission of Appeals of Texas, Section A. June 1, 1921.)

**1. Appeal and error ⬤⟿1213—Judgment on former appeal not conclusive where pleadings and facts differ.**

Where the pleadings and facts on second trial were not identical with those on the first, the opinion and judgment of the Court of Civil Appeals on the former appeal did not so finally and fully adjudicate both the law and the facts as to justify the trial court on the second trial in striking out the answer of defendants, containing both general denial and other defensive pleas, and in rendering judgment for plaintiff without proof of any facts except the value of the rents sued for.

**2. Vendor and purchaser ⬤⟿18(½)—Optionee did not acquire title by option contract.**

By an option contract the optionee did not acquire any title to the land involved, but at most secured only the right to acquire an interest in the land by complying, at his election, with the stipulations on his part.

**3. Vendor and purchaser ⬤⟿196—Owner entitled to rents and crops until title defeated by exercise of option.**

The holder of an option contract covering land can occupy no better position than the holder of a mortgage duly recorded prior to the owner's contract of tenancy and prior to planting of the crop; in case of a mortgage the owner of the land remains such until his title is defeated at foreclosure sale, and in the case of an option he remains the owner until the holder of the option tenders full compliance with its terms and becomes entitled to receive a conveyance in accordance therewith, the owner in either case being entitled to the rents and crops until his title is actually defeated.

**4. Crops ⬤⟿5—Crops pass under deed unless severed, but are personal property.**

Though annual crops, the fruits of industry, so long as they are attached to the land, pass with the deed thereto unless actually or constructively severed, yet they are for general purposes classed as personal property.

**5. Mortgages ⬤⟿372(4)—Owner cannot sever crops or rents by reservation on foreclosure sale.**

When there is a foreclosure under power of sale in a deed of trust, the owner is not an actor in the transaction, and cannot sever the crops or rents by reserving them at the time of sale.

**6. Evidence ⬤⟿13—Maturity of crops matter of common knowledge.**

It is a matter of common knowledge that the cultivation of crops of corn and cotton in Wharton county at the time of tender by plaintiff optionee and demand by him was practically complete, and that such crops were either partly matured or rapidly approaching maturity.

**7. Vendor and purchaser ⬤⟿196—Option contract gave optionor right to reserve crops and rents.**

Option contract covering the sale of land, properly construed, *held* to have given the owner and optionor the right to reserve his growing crops and the rents arising out of them when the optionee elected to exercise his option.

Error to Court of Civil Appeals of First Supreme Judicial District.

Suit by R. A. Armstrong against G. C. Gifford, wherein B. C. Roberts and others, executors of defendant, were made parties defendant in his stead on his death. From judgment for plaintiff, defendants appealed to the Court of Civil Appeals, which affirmed (212 S. W. 227), and defendants bring error. Judgments of the trial court and Court of Civil Appeals reversed, and case remanded for further proceedings on recommendation of the Commission of Appeals.

Hall & Barclay and Kelley & Hawes, all of Wharton, and Williams & Neethe, of Galveston, for plaintiffs in error.

Gaines & Corbett, of Bay City, for defendant in error.

GALLAGHER, J. R. A. Armstrong, defendant in error, instituted this suit in the district court of Wharton county against G. C. Gifford, and alleged that said Gifford by a contract in writing dated February 21, 1913, in consideration of $1,000, gave him an option on 531 acres of land in said county at $60 per acre, and that said option was to be exercised, if at all, on or before August 1, 1913.

It was further alleged that said contract provided that the consideration for the purchase of said land under said option should be paid one-half cash and the remainder in one, two, three, and four years, and that said Armstrong was given the right to sell said land on or before August 1, 1913, on the same terms, and that said Gifford would make a deed to the purchaser, and that in such event said Armstrong should receive as his compensation the excess of the purchase price over $60 per acre.

It was further alleged that crops of corn, cotton, and other things were grown on the said land during the crop year of 1913, and that the reasonable rental or rental value of such crops when matured was $2,835.89, and that said Gifford received that amount as rentals on said land for said year.

It was further alleged that on July 31, 1913, Armstrong sold said land to G. A. Harrison, and that said Harrison then and there tendered compliance with the terms of said option and demanded a deed to said land, and that Gifford refused to accept said tender or make said deed.

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

It was further alleged that by such tender and demand Harrison became entitled to the land together with the rentals on said land for the year 1913, that such rentals were in excess of the purchase price of said land under the terms of said option contract, and that it was agreed between Armstrong and Harrison that such rentals should pass to Armstrong as his compensation in the premises.

It was further alleged that after such tender and refusal Gifford conveyed said lands to Harrison, and that it was also agreed by and between Gifford, Armstrong, and Harrison · that Armstrong should have a right to sue for and recover such rents in his own name, provided he, or Harrison, or both were entitled on account of such tender and demand under the terms of such option contract to a deed which would have passed such rents or crops.

G. C. Gifford died before a trial was had, and his executors, B. C. Roberts and Mrs. Annie Gifford, plaintiffs in error herein, were made parties defendant in his stead.

Said executors answered by general and special exception, general denial, and by special pleas, alleging, among other things, that said option contract was entered into when only a small portion of said land, if any, had been planted, and before any of such crops were in existence, that nothing was said in the negotiations resulting in said contract about purchasing such crops or the rents therefrom, and that it was never contemplated by the parties that said option contract should cover either the crops or rentals on said land for said year.

They further alleged that said Gifford, without any idea that Armstrong intended under such option contract to claim the crops or rents for said year, proceeded to advance money to the tenants, and that Armstrong allowed him to make such advancements until a few days before the expiration of such option contract.

They especially denied that Harrison offered to comply with the terms of the option contract, and alleged the fact to be that Harrison was unwilling to purchase the land unless Gifford would agree that the rents should go with the land, which he had theretofore declined to do, on the ground that the option contract did not require him to do so.

They further denied that the tender and demand on July 31, 1913, as alleged by Armstrong was made in good faith, and alleged that Harrison never offered to execute the notes required by such option contract, and that Harrison never intended to execute and deliver to Gifford notes for the deferred payments bearing interest from the date of the deed so demanded, but that the tender of the cash consideration was made under an agreement between Armstrong and Harrison that they would divide any recovery which might

be had by reason of the refusal of such tender and demand for a deed.

A trial was had before a jury, and under a peremptory instruction of the court a verdict was returned for the defendants, and judgment entered in accordance therewith.

Armstrong appealed, and on hearing of such appeal the judgment of the trial court was reversed, and the cause remanded. 196 S. W. 723.

The executors then filed an amended answer consisting of a general denial, repetition and elaboration of their former pleadings, and certain additional allegations raising issues not made in such former pleadings.

Armstrong excepted to such amended answer and to the several paragraphs thereof on the ground that the opinion and judgment of the Court of Civil Appeals in said cause was res adjudicata of all matters so set up by said amended answer of said executors, and said demurrers were sustained by the court, and the court ordered that no evidence be admitted upon the trial of said cause except as to the value of the crops and rents in controversy.

The judgment of the trial court further recited that the matters in controversy were submitted to the court, and that the court heard evidence only as to the value of the crops received by Gifford after deducting therefrom the amounts received by the tenants and the amounts advanced in raising and gathering the crops, and that it was agreed that rents so collected by Gifford for said year amounted to $2,635.89.

Judgment was rendered in favor of Armstrong against said executors for said sum, with interest from January 1, 1914, and costs of suit.

Said executors appealed, and on hearing of such appeal said judgment was affirmed. 212 S. W. 227.

Said executors applied for and obtained a writ of error, and the case is before us for hearing on said writ.

The Court of Civil Appeals on the first appeal in this case construed the contract sued on adversely to the contention of plaintiffs in error, and held that their testimony failed to establish a defense thereto, and ended the opinion with the statement that the court was not in possession of sufficient facts upon which to render judgment, and that the judgment of the trial court would therefore be reversed, and the cause remanded.

The judgment of the court was as follows:

"This cause came on to be heard on the transcript of the record, and the same being inspected, because it is the opinion of this court that there was error in the judgment, it is therefore considered, adjudged, and ordered that the judgment of the court below be reversed, and the cause remanded for further proceedings in accordance with the opinion of this court."

[1] Plaintiffs in error in their first assignment submit that the Court of Civil Appeals erred in holding that the opinion and judgment on the former appeal so finally and fully adjudicated both the law and the facts as to justify the trial court upon the second trial in striking out their answer containing both general denial and other defensive pleas and rendering judgment for defendant in error without proof of any facts except the value of the rents.

The statement of facts on this appeal shows that the court on the trial here appealed from announced that in his judgment all matters and things in controversy in this cause were fully settled by the opinion of the Court of Civil Appeals, that the judgment and mandate of said court were then presented and considered, a copy of the same being attached to such statement of facts and being made a part thereof, and that no further evidence was introduced or permitted than to show the value of the rents in controversy, and that it was agreed by the parties in open court that the value of such rents was $2,635.89, and that upon such admission and the said judgment and decision of said Court of Civil Appeals the court entered judgment for such rents with interest and costs.

In Magnolia Park Co. v. Tinsley, 96 Tex. 374, 73 S. W. 5, it appeared that the Court of Civil Appeals, on a former appeal of the case, had held that defendants had title to a part of the land in question, and that plaintiffs were entitled to recover a part, but, after reversing a judgment in favor of the defendants, remanded the cause for the sole reason that the jury had not found the number of acres the plaintiffs were entitled to receive. 59 S. W. 629. Of this judgment the Supreme Court said:

"Upon the former appeal the Court of Civil Appeals for the Third Supreme Judicial District did not render judgment declaring the rights of the parties, but said: 'The record is not in such condition as will authorize this court to render judgment.' That court decided a question of law which is involved in this appeal, but the decision does not bind the Court of Civil Appeals or this court on this appeal. Kempner v. Huddleston, 90 Tex. 184."

In the case of Kempner v. Huddleston, 90 Tex. 184, 37 S. W. 1066, so cited, the Supreme Court, in answer to a certified question from the Court of Civil Appeals inquiring whether the decision of that court on the first appeal of the case was conclusive of the question then decided, but again presented in the appeal then pending, replied:

"We answer that the former decision of the court in this case constitutes no bar to the further consideration of the same question upon a second appeal. Burns v. Ledbetter, 56 Tex. 282; Railway v. Faber, 77 Tex. 153; Bomar v. Parker, 68 Tex. 435.

"In Railway v. Faber, cited above, the court said: 'Upon a second or other subsequent appeal this court adheres to its former rulings unless clearly erroneous.'

"The question as to whether the court will reconsider, upon a second appeal, what it has formerly decided in the same case, must always be addressed to the discretion of the court and determined according to the particular circumstances of that case."

The court, in Frankland v. Cassaday, 62 Tex. 418, 419, 420, considered a case on its third appeal in which the record showed that the pleadings had undergone no change, and that the issues of law and fact were identical with such issues on the former appeal, the statement of facts on the former appeal having been used instead of depositions or witnesses. In the opinion in that case the court lays down the rule as follows:

"Recurring to the rule stare decisis relied on by the defendant in error, the general rule is thus stated by Wells in his treatise on Res Adjudicata and Stare Decisis, § 613: 'It is a well-settled principle that the question of law decided on appeal to a court of ultimate resort must govern the case in the same court, and the trial court, through all subsequent stages of the proceedings, and will seldom be reconsidered or reversed, even if they appear to be erroneous.

"The application of this rule, however, contemplates that the facts on the second appeal shall be substantially the same, or rather, perhaps, that they shall not be such as to affect materially the legal questions involved under the first appeal."

We sustain this assignment and hold that the trial court misconstrued the effect of the decision and judgment of the Court of Civil Appeals on the first appeal in this cause, and erred in refusing to put defendant in error on proof of his case (except as to the amount or value of the rent in question), and in striking out the answer of plaintiffs in error and refusing to hear any competent testimony which they might have seen fit to offer. It follows that the Court of Civil Appeals also erred in affirming the judgment of the trial court. Magnolia Park Co. v. Tinsley, supra; Kempner v. Huddleston, supra; Frankland v. Cassaday, supra; Ogden v. Bosse, 23 S. W. 730; Miller v. Burgess, 154 S. W. 590; Mitchell v. Western Union Telegraph Co. 23 Tex. Civ. App. 445, 56 S. W. 442 (writ refused).

Plaintiffs in error by proper assignments submit for construction the option contract declared on, and contend that the same did not authorize defendant in error nor the purchaser produced by him to demand the rents and growing crops in addition to the land.

The contract declared on simply gave an option to purchase the land. None of its terms purported to deal either with crops or rents arising out of the same.

The land was cultivated by tenants and planted in corn, cotton, and other crops. The rents reserved were in part money rent,

in part the ordinary "third and fourth" of the crops, and in part the share of said Gifford in crops raised by tenants "on the halves" as shown by statement attached to the pleadings of plaintiffs in error, and which the statement of facts recites is the basis of the calculation and agreement as to the amount of such rents.

[2] The defendant in error did not, by the option contract, acquire any title to the lands. At most, he secured only the right to acquire an interest in the lands by complying, at his election, with the stipulations on his part. Oil & Pipe Line Co. v. Teel, 95 Tex. 586, 592, 68 S. W. 979. Gifford was the owner of the land at the time the crops were planted. He could not know that the defendant in error would ever avail himself of the right to purchase under the terms of the option contract. If he let the land lie idle, and defendant in error did not elect to take the land, he would lose a year's rental. If he rented the land as he did do, he necessarily expended time, attention, and skill in selecting and contracting with his tenants. Some of his tenants cultivated a part of said lands for a share of the crops, Gifford furnishing the land, seed, and supplies, and the tenant furnishing the labor, under an agreement that the proceeds of the crop should be equally divided. It seems from the statement of facts and the exhibit to the pleadings on which the same purports to be based that Gifford's entire one-half interest in these crops was classed as rents. According to the contention of defendant in error, Gifford was compelled to let the land remain uncultivated and risk losing the entire rental value of the land for the year, or to have it put in cultivation and risk losing his time, skill, and labor expended in the premises, as well as the seed furnished and the use of his teams, tools, and other supplies.

[3] We have found no cases directly in point with reference to the rights of the holder of an option contract, but we are of the opinion that such holder can occupy no better position than the holder of a mortgage duly recorded prior to the contract of tenancy and prior to the planting of the crop. In case of a mortgage the owner of the land remains such until his title is defeated at foreclosure sale, and in the case of an option he remains the owner until the holder of the option tenders full compliance with its terms and becomes entitled to receive a conveyance in accordance therewith. In either case the owner is entitled to the rents and crops until his title is actually defeated.

[4] While annual crops, the fruits of industry, so long as they are attached to the land, are held to pass with a deed thereto unless actually or constructively severed, yet they are for general purposes classed as personal property. Willis v. Moore, 59 Tex. 628, 637, 638, 46 Am. Rep. 284; Temple Trust Co. v. Pirtle, 198 S. W. 627, 628; Kreisle v. Wilson, 148 S. W. 1132, 1134; Colonial Land & Loan Co. v. Joplin, 196 S. W. 626, 629 (writ refused by committee of judges); Colonial Land & Loan Co. v. Joplin, 184 S. W. 537, 539.

The Supreme Court in Willis v. Moore, supra, 59 Tex. 638, 46 Am. Rep. 284, says:

"A mortgagor is entitled to sever in law or fact the crops which stand upon his land at any time prior to the destruction of his title by sale under the mortgage; this results from his ownership and consequent right to the use and profits of the land, and the mortgage is taken with knowledge of that fact."

The court in the same case, in speaking of the manner in which such severance may be made (59 Tex. 639, 46 Am. Rep. 284), says:

"The Court of Appeals of Maryland, in Purner v. Piercy, 40 Md. 223, in speaking of what constitutes severance, say: 'There is nothing in the vegetable or fruit which is an interest in or concerning land, when severed from the soil, * * * whether grain, vegetables, or any kind of crop (fructus industriales), the product of periodical planting and culture; they are alike mere chattels, and the severance may be in fact, as where they are cut, and removed from the ground, or in law, as when they are growing, the owner in fee of the land, by a valid conveyance, sells them to another person, or when he sells the land, reserving them by an express provision.' To the same effect is the case of Titus v. Whitney, 1 Harrison, 85."

[5] Of course, when there is a foreclosure under power of sale in a deed of trust, the owner is not an actor in the transaction, and cannot as a part thereof sever the crops or rents by reserving them at the time of sale.

The case of Colonial Land & Loan Co. v. Joplin, 196 S. W. 626, 628, involved a judicial foreclosure and sale. The trial court, following the analogy of growing crops held that certain nursery stock growing on the mortgaged premises was personal property, and that the lien of the deed of trust did not attach thereto, and severed such nursery stock by express provision in the decree and ordered the land and nursery stock sold separately and refused to order the proceeds of the sale of the nursery stock applied on the mortgage debt, a large part of which remained unpaid after applying the full proceeds of the sale of the land.

The Court of Civil Appeals affirmed the judgment, and in its opinion said:

"Whatever may be the rule in other jurisdictions, with us neither annual crops, whether growing or standing in the field ready for harvesting, nor anything else actually annexed to the land, and not intended by the parties to its being put there to become a permanent accession to the freehold, constitute a part of the realty, but are regarded as personal property; and as such the title thereto remains in the maker of a mortgage upon the land, which does not by specific provision include them, and he may sever them in law or in fact

at any time prior to the destruction of his title by sale under his mortgage. No sale under the mortgage, and therefore no extinguishment of the mortgagor Nursery ' Company's title, having occurred at the time the court, through the receiver, in September, 1914, took charge of and henceforth stood in its place as to its property, no good reason occurs to us as to why the court could not cause the severance in this instance, and thereby do the same thing the mortgagor might have done.

"The first of the above-stated rules of law was declared by our Supreme Court in Willis v. Moore, 59 Tex. 628, 46 Am. Rep. 284, and the other in Hutchins v. Masterson, 46 Tex. 551, 26 Am. Rep. 286, supra, and both pronouncements are still the law in Texas, having been reaffirmed by that and other of our courts a number of times.

"If, therefore, under the evidence and conditions shown here, it was not intended by the parties, in giving and accepting the trust deeds, that the nursery stock should become a permanent accession to the soil, or if it is to be considered as in the nature of a crop produced by annual labor, and consequently subject to the same rule of law, it was personalty, and not affected by the trust deed liens.

"That under both suppositions its character was fixed as personalty, we think, is quite free from doubt."

An application for writ of error was refused by the committee of judges.

Defendant in error did not claim that there was anything in the circumstances attending the making of the contract tending to show that the parties intended that the purchaser of the land under such option should be entitled to the growing crops or the rents arising out of the same. He stood on the letter of his contract.

According to the allegations of the plaintiffs in error the deceased, G. C. Gifford, at all times denied that it was the intention of the parties that crops or rents should pass to the purchaser on the exercise of the option, and also denied that a proper construction of the option contract so required, and at all times asserted his right to reserve his crops and rents in the consummation of a sale under such option.

[6] It is a matter of common knowledge that the cultivation of crops of corn and cotton in that part of the state at the time of the tender and demand alleged was practically complete, and such crops either partly matured, or rapidly approaching maturity.

[7] We therefore sustain these assignments, and hold that a proper construction of the option contract gave the deceased, G. C. Gifford, the right to reserve his growing crops and the rents arising out of the same.

The other questions raised in the application are rendered immaterial by our holding on the question just discussed.

The condition of the record is such that we do not feel justified in recommending that the case be reversed and rendered, and we

therefore recommend that the judgment of the trial court and the Court of Civil Appeals be reversed and remanded for further proceedings in accordance with this opinion.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.

---

⬬For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes