## CALVERT et al. v. HANNA.

### No. 5155.

Court of Civil Appeals of Texas. Amarillo.

May 6, 1940.

Rehearing Denied June 3, 1940.

Preston Calvert, of Grand Saline, and Nelson & Brown, of Lubbock, for appellants.

Syrian E. Marbut and McWhorter & Howard, all of Lubbock, for appellee.

JACKSON, Chief Justice.

The appellants, Alma Webb Calvert, joined by her husband, Preston Calvert, instituted an action of trespass to try title in the District Court of Lubbock County against the appellee, John Q. Hanna, to recover title and possession to Lots Nos. 19, 20 and 21 in Block 63 of the Overton Addition to Lubbock.

The other allegations in appellants' petition are immaterial.

The appellee answered by general demurrer, plea of not guilty, alleged that he is a married man, asserted that Lots Nos. 19 and 20 had at all times since July 15, 1924 constituted his homestead or a part thereof and had been used and occupied by him and his family continuously as such. He also urged that he had acquired title under the statute of ten year limitation.

At the close of the testimony, in obedience to a peremptory instruction by the court, the jury returned a verdict in favor of appellee and the court rendered judgment to the effect that appellants take nothing by their suit and that appellee have and recover the title to the lots, from which judgment this appeal is prosecuted.

The parties agreed that the common source of title is in John A. Long.

Appellants challenge as error the action of the court in directing a verdict against them because they contend the evidence presented fact issues for the determination of the jury.

The record shows that on July 15, 1924 J. A. Long and wife conveyed to appellee, John Q. Hanna, Lots Nos. 18, 19, 20 and 21 in Block 63 of the Overton Addition to Lubbock for a recited consideration of $500 in cash and the execution and delivery of a series of six vendor's lien notes, five for the sum of $100 and the sixth for the sum of $200, one note payable each year until the debt was satisfied. These notes were finally released on January 29, 1930.

The appellee erected a shack on Lot 18 immediately after its purchase and moved into it with his family and in 1925 obtained a loan, gave a mechanic's lien on Lot 18, and erected a dwelling thereon which was occupied by him and his family for several years. He defaulted in the payments on the loan, the mechanic's lien given on Lot 18 to secure the payment thereof was foreclosed and the lot sold under execution on July 2, 1929 to the Whaley Lumber Company. After the appellee was dispossessed he moved with his family into what he designates as a shack which he claims was located on Lots Nos. 19 and 20, but if the shack or any part thereof was located on Lot No. 20, the testimony is too uncertain to justify the court in so holding as a matter of law. His wife and children left him on May 5, 1930, have never returned and have had no communication with him since. He has not re-married but he asserts that he uses, occupies and claims Lots Nos. 19, and 20 as his homestead.

On July 13, 1926 appellee and his wife conveyed Lot 21 to O. B. Seward for a recited consideration of $350 paid in cash and the assumption of the payment by Seward of $150 on the original consideration appellee contracted to pay J. A. Long for the four lots purchased on July 15, 1926.

On August 23, 1927 O. B. Seward conveyed Lot 21 to Ance M. English for a consideration of $400 subject to $150 of the indebtedness due J. A. Long. The record reveals that thereafter Ance M. English and wife conveyed said lot to appellee, John Q. Hanna, for a consideration of $125 cash and the execution of one vendor's lien note dated August 24, 1927, payable on or before January 1, 1928 to Ance M. English in the sum of $225, with interest thereon at the rate of 8% per annum, and the assumption of $150 of the indebtedness due J. A. Long. An express vendor's lien is retained in this deed to secure the payment of the note for $225 which the deed recites is also secured by deed of trust on the lot. This deed of conveyance was lost but on January 10, 1928 a substitute deed was made by the same grantors conveying the same lot to the same grantees for the same consideration recited in the lost deed.

On August 24, 1927 the appellee and his wife executed and delivered to Sterling J. Parrish, Trustee, a deed of trust convey-

ing Lots 19, 20 and 21 in trust to secure Ance M. English in the payment of said vendor's lien note for $225. The deed of trust is in the usual form and contains the following statement: "We hereby designate as our homestead the property on which we live and reside, Lot No. 18 in Block No. 63, of the Overton Addition to the City of Lubbock, Lubbock County, Texas."

On October 19, 1927 Ance M. English for a valuable consideration transferred and assigned said note for $225, together with the vendor's lien and deed of trust lien securing the payment thereof to P. G. Webb. On July 2, 1929 the trustee, Sterling J. Parrish, in compliance with the law, sold the property and by a proper trustee's deed conveyed Lots Nos. 19, 20 and 21 to P. G. Webb. Neither this deed of trust nor the trustee's deed is attacked on any ground other than that Lots 19 and 20 constituted the homestead of appellee and that appellants' title to all three of the lots was barred by the ten year statute of limitation.

It is apparently admitted by all parties that the lots involved constitute the separate property of Mrs. Calvert and not the community estate of herself and husband.

The appellee testified and the instruments show that the note for $225 above described evidenced a part of the purchase price of Lot 21 in the conveyance of said lot to him by Ance M. English. The note was secured by deed of trust covering Lots 19, 20 and 21, under which the trustee in his capacity as such sold and conveyed the lots to P. G. Webb, who deeded them to his father, W. S. Webb, and who conveyed them to his daughter, appellant Mrs. Calvert.

■ The appellee was the mortgagor with not only the right of possession but actually in possession of the lots and held the title thereto encumbered only by the lien. 29 Tex.Jur. 879, para. 68. His title and right of possession continued until the foreclosure sale which was made July 2, 1929. The mortgagee, until after the foreclosure sale, or his assignors had no title, or possession or right of possession and could not have maintained a suit in trespass to try title against the mortgagors and limitation did not begin to run against them until the foreclosure sale or the repudiation of the deed of trust by appellee. 29 Tex.Jur. 787, para. 3, page 880, para. 69.

■ As said in Willis v. Moore, 59 Tex. 628, 46 Am.Rep. 284: "In this state it has been held, from an early day, that a mortgage is but a security for a debt; that the title to property mortgaged remains in the mortgagor, and with it the right of possession, which is one of the ordinary incidents of title. Duty v. Graham, 12 Tex. 427 [62 Am.Dec. 534]; Wright v. Henderson, 12 Tex. [43] 44; Wootton v. Wheeler, 22 Tex. 338."

In McCamant et al. v. Roberts, 87 Tex. 241, 27 S.W. 86, 87, the Supreme Court says: "In this state a mortgagor retains the title to the land, and is entitled to possession, unless otherwise stipulated, after breach of the condition as well as before, until foreclosed."

In Hume v. LeCompte et al., Tex.Civ. App., 142 S.W. 934, 935, it is said:

"Appellant seems to labor under the view that appellees set up an equitable outstanding title, but by appellant's witness it was shown that the instrument, which on its face was a deed, was in truth and fact a mortgage, and being a mortgage, it was only security for a debt, and the title to the property remained in Elizabeth Maddox, as well as the right of possession. Willis v. Moore, 59 Tex. 628, 46 Am.Rep. 284; Erwin v. Blanks, 60 Tex. 583; Pratt v. Godwin, 61 Tex. 331; Wilkins v. Bryarly [Tex.Civ.App.], 46 S.W. 266.

"No doubt can arise, under the various decisions of this state, that a mortgagee cannot sustain an action of trespass to try title based on his mortgage, because neither the title to the land nor the right of possession is in him."

In 1 Am.Jur. 812, para. 37, the author says: "The possession of a mortgagor, or his assignee, is not only entirely consistent with the rights and estate of the mortgagee, but as a general rule, cannot be adverse thereto until he has denied the mortgagee's rights under the mortgage and set up an exclusive title in himself so openly and notoriously that the mortgagee must have known of his adverse claim."

In the case of Lewis v. Hawkins, U. S. Supreme Court, 23 Wall. 119, 127, 23 L. Ed. 113, it is held: "It is well settled that the possession of the mortgagor is not adverse to that of the mortgagee. In the case last cited [Relfe v. Relfe, 34 Ala. 500, 504, 73 Am.Dec. 467] it is said that to apply the Statute of Limitations

'would be like making the lapse of time the origin of title in the tenant against his landlord.'"

In McLane v. Paschal, 47 Tex. 365, 369, the Supreme Court says: "It is now finally and definitely settled by this court, that a deed of trust to secure the payment of a debt does not operate as an absolute transfer of the property to which it refers, to the trustee, upon the trust mentioned in the deed, defeasible upon the conditions therein stipulated; but that such instrument is, in legal effect, a mere mortgage, with a power to sell."

We do not find the date of the filing of the original petition in this case but the first amended original petition was filed June 12, 1939, which was less than ten years after the foreclosure and sale of the property on July 2, 1929 and as the only limitation relied on by appellee is the ten year statute such period of limitation was not complete on the date of filing the suit and appellee's title was not matured by the ten year statute. The sale of the property by Sterling J. Parrish, the trustee in the deed of trust which secured the note for $225, a part of the consideration for Lot 21, was valid to such lot unless said note had been paid, and also to Lots 19 and 20 unless they were a part of the homestead when encumbered by the deed of trust. Constitution of Texas, Art. 16, Sec. 50, Vernon's Ann.St.; Floyd v. Hammond, Tex.Com.App., 268 S.W. 146.

The appellee testified that this note was paid by his drilling of a well and hauling brick for P. G. Webb and W. S. Webb, but he was the only witness to the fact of payment. He did not have the note in his possession, there was no release thereof, the property was sold several years subsequent to the date he claims to have paid the note, and the court was not authorized to direct a verdict in his behalf on his testimony alone. Simmonds et al. v. St. Louis, B. & M. R. Co., 127 Tex. 23, 91 S.W.2d 332.

In addition to this, circumstances testified to by Mrs. Calvert contradicted appellee's testimony and this fact should have been submitted to the jury.

The appellee and his wife designated in the language heretofore quoted from the deed of trust dated August 24, 1927 Lot 18 in Block 63 as their homestead. They had erected a house of several rooms in which they lived with their children until after the lot and premises were sold to the Whaley Lumber Company under execution on July 2, 1929. The testimony tends to show that on August 24, 1927 when the deed of trust was executed Lots 19 and 20 were used for gardening purposes, chicken yard and probably a cow lot. The lots were not completely fenced and, in our opinion, the testimony is not so conclusive as to warrant the court in holding that when the deed of trust was executed Lots 19 and 20 were as a matter of law a part of the homestead.

The judgment is reversed and the cause remanded.