NO. 07-07-0374-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JULY 21, 2009
_____

TERRA XXI LTD., ET AL., APPELLANTS

V.

AG ACCEPTANCE CORPORATION, ET AL., APPELLEES
_____

FROM THE 222ND DISTRICT COURT OF DEAF SMITH COUNTY;

NO. CI-04B-011; HONORABLE ROLAND SAUL, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

_____**MEMORANDUM OPINION**


Background

In 1998, Ag Services of America, Inc. (Ag Services) provided a series of loans to Veigel Farm Partners (VFP), Grain Central Station, and Terra XXI, Ltd. (Terra).   In exchange for the funds, Terra granted a deed of trust to property located in Deaf Smith County in favor of Ag Acceptance Corporation (AAC) as collateral.   In 2000, Terra and VFP defaulted on the loan and filed for bankruptcy, which culminated in a bankruptcy plan of reorganization for VFP's and Terra's debt ("reorganization plans"), including the

outstanding Ag Services's loans. On October 20, 2002, as part of the bankruptcy proceedings, VFP and Terra submitted Agreed Orders on Objection of Ag Services to the reorganization plan ("Agreed Orders") in each of the two bankruptcy cases which were approved by the bankruptcy court.[1] Based on the Agreed Orders, the parties entered into Agreed Settlements. The remaining appellants, Veigel Cattle Company, Bob Veigel, Inc., Steve Veigel, Inc., Vicki Veigel, Inc., Veigel-Kirk, Inc., Veigel Farms, Inc., Bob Veigel, individually, Steve Veigel, individually, and Grain Central Station, Inc. delivered to Ag Services guaranty agreements as part of the settlement agreements.[2] In the Agreed Orders, Ag Services's claims were secured by a second lien on all real property owned by Terra in Deaf Smith County.

In 2003, Terra failed to make a loan payment to First Ag Credit, a superior lienholder, which was a condition of the settlement agreement with Ag Services. Further, Ag Services gave notice that the ad valorem taxes on the properties were also overdue. The settlement agreements stated that a default by Terra would constitute a default by VFP. Hence, Ag Services, believing that Terra and VFP had defaulted per the settlement agreement, sent out notices of default on June 16, 2003. A month later, on July 17, 2003, Ag Services sent out notices of acceleration confirming that, because of the failure of Terra

---

[1] The reorganization plan and Agreed Order for each company are separate from the other company. However, because the language contained in the documents for Terra and VFP are virtually identical, we will collectively refer to the two companies' documents as the reorganization plans and Agreed Orders.

[2] Some documents relating to the settlement agreement, such as ratification of guaranty and clarifying orders, were signed on later dates, however, all documentation provided October 20, 2002 as the effective date for the agreements.

and VFP to remedy the default conditions, the indebtedness to Ag Services was due and payable. Finally, on August 12, 2003, Ag Services sent Terra and VFP notice of a foreclosure sale of the Deaf Smith property set for September 2, 2003.[3] At the foreclosure sale, the encumbered property was purchased by AAC for $20,000. After Robert Veigel and Ella Veigel, who resided on the property, refused to surrender the property, AAC initiated a forcible detainer action in justice court to which appellants responded with a suit in district court alleging, among other acts, wrongful foreclosure on the property. Appellants' suit named Ag Services, AAC, and Mark Harmon (substitute trustee) as defendants. The named defendants filed a motion for summary judgment which prompted appellants to file a motion for partial summary judgment. Harmon requested and was granted a severance of the cases. Harmon then filed for summary judgment which was granted. Appellants appealed but this court affirmed the trial court. Terra XXI, Ltd. v. Harmon, 279 S.W.3d 781 (Tex.App.–Amarillo 2007, pet. denied). By separate orders, the trial court granted summary judgment in favor of Ag Services and AAC while denying the appellants' motion for partial summary judgment.

In the present case, appellants appeal raising seven issues. By the first three issues, appellants contend that the trial court erred in denying their summary judgments and granting appellees' summary judgments because: (1) the statute of limitations had run on the deed of trust, thereby negating the foreclosure sale; (2) the Agreed Orders required

---

[3] The foreclosure notice specified that the foreclosure sale was proceeding under the deed of trust executed by Terra with AAC as the beneficiary. AAC is an Ag Services-related financing company represented by the same law firm as Ag Services's counsel. Hence, the notices of default, acceleration, and foreclosure were actually sent out on behalf of both Ag Services and AAC.

redocumentation of the pre-bankruptcy notes and deed of trust liens; and (3) appellees failed to show that there were no genuine issues of material fact regarding the foreclosure claims. Next, as issues four through seven, appellants contend that the trial court erroneously granted appellees' summary judgment because the trial court erred in: (4) dismissing appellants' claims of deceptive trade practices, predatory lending, usury, tortious interference, and failure to perform an accounting of the financial dealings between the parties; (5) failing to recognize appellants' claims of fraudulent inducement and their right to elect remedies upon appellees' breach of the settlement agreement; (6) requiring appellants to deposit all checks jointly payable to defendants into the court registry when appellants had the right to go to a jury on that question; and (7) failing to recognize Robert and Ella's homestead interest in the encumbered property. We affirm.

Issue One: Statute of Limitations

When both parties move for summary judgment and the trial court grants one motion and denies the other, the appellate court reviews the summary judgment evidence of both parties, determines all questions presented, and renders the judgment that the trial court should have rendered. Bradley v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999).

On the first issue, appellants contend that Ag Services began foreclosure procedures in August 2003, more than four years after the stated January 31, 1999 "maturity date" on the face of the deed of trust and, thus, the foreclosure was barred by the statute of limitations. See TEX. CIV. PRAC. & REM. CODE ANN. § 16.035 (Vernon 2002).

4

Further, appellants contend that the lien extension agreement signed on August 14, 2003, cannot revive the lien that had already been extinguished prior to execution of the lien extension agreement. In contrast, appellees contend that, during the bankruptcy proceedings, the parties agree to an extended payment schedule and thereby extended the maturity date on the obligations.

By the terms of the extension agreement, the agreed effective date of the lien extension was October 21, 2002. An agreement between litigating parties is contractual. See Wagner v. Warnasch, 156 Tex. 334, 295 S.W.2d 890, 893 (1956). In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). Considering that appellants were proceeding in bankruptcy and that the parties anticipated the settlement agreements to be binding in accordance with the Agreed Order of October 2002, we hold that the lien maturity date was extended and, thus, the deed of trust maturity date was also extended. Therefore, we find that the trial court did not err in denying appellants' Motion for Summary Judgment and granting appellees' Motion for Summary Judgment by determining that the Lien Extension Agreement did extend the Deed of Trust and that the foreclosure proceeding was not barred by the statute of limitations. We overrule appellants' first issue.

Issues Two and Three: Redocumentation and Appellees' First Motion for Summary Judgment

In reviewing a traditional summary judgment: (1) the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as

a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts must be resolved in favor of the nonmovant. Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex.1997) (citing Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex.1985)).

Appellants' next two issues have previously been addressed by this court. See Terra XXI, 279 S.W.3d at 786. In issue two, appellants contend that the reorganization order in the bankruptcy court extinguished appellants' debt and required a new note and deed of trust. However, we have previously held that the reorganization plans did not extinguish the debt. See id. We reaffirm that position.

Likewise, on issue three, appellants contend that the trial court erred in granting appellees' motion for summary judgment because genuine issues were raised. Specifically, appellants contend that (a) foreclosure was wrongful and the foreclosure notices were inadequate; (b) ad valorem taxes were timely paid; (c) appellees failed to inform appellants of the exact amount owing; (d) the foreclosure sales price was inadequate, and (e) the trial court failed to recognize Robert and Ella's homestead rights. This issue has been extensively discussed in our previous opinion and we continue to hold that considering the evidence in favor of the nonmovant there are no genuine issues of material fact considering the notice given, the payment of the ad valorem taxes, the amount owing, the adequacy of the sales price, nor on the issue of homestead rights. See Terra XXI, 279 S.W.3d at 786-789. We overrule appellants' second and third issues.

6

Issue Four: Granting of Appellees' Fourth Motion for Summary Judgment

Next, appellants contend that the trial court erred in dismissing appellants' claims of deceptive trade practices, predatory lending, usury, tortious interference, and failure to perform an accounting of the financial dealings between the parties by granting appellees' fourth motion for summary judgment. Appellants' complaints break down into four sub-issues: (a) the timeliness of appellees' Fourth Motion for Summary Judgment; (b) appellees' failure to properly raise affirmative defenses in its Second Amended Answer instead of in a motion for summary judgment; (c) the appropriateness of requesting the deposit of jointly payable checks into the court registry; and (d) the court's granting of appellees' no-evidence summary judgment on appellants' post-settlement usury claim.

(A) Timeliness of Appellees' Fourth Motion for Summary Judgment

Appellants contend that the trial court erred in granting appellees' fourth motion for summary judgment because "without leave of court, without a motion to alter the scheduling order of this court, and without even an order setting hearing, Defendant/Appellees were allowed over Plaintiffs/Appellants' Motion to Strike, to inject new matters . . . . Appellants should not have been required to respond to such matters absent a motion for leave of court." However, appellants have failed to point toward any evidence of a hearing or ruling on Appellants' Motion to Strike. TEX. R. APP. P. 33.1. Appellants have made no showing of surprise or prejudice by appellees' failure to obtain leave of court to file a late pleading. In fact, appellants presumably benefitted by the trial court's practice of allowing filing without leave of court because they filed a Motion for Summary Judgment

7

after the expiration of the deadline stated by appellants. In the absence of a sufficient showing of surprise by the opposing party, the failure to obtain leave of court when filing a late pleading may be cured by the court's consideration of the pleading. See Patterson v. First Nat'l Bank of Lake Jackson, 921 S.W.2d 240, 244 (Tex.App.–Houston [14th Dist.] 1996, no writ). In this case, the trial court held a hearing on January 12, 2007 and "[a]fter considering the motions, responses, evidence, and arguments of counsel" issued an order on Appellees' Fourth Motion for Summary Judgment. We conclude that the trial court did not err in considering Appellees' Fourth Motion for Summary Judgment.

(B) Appellees' Failure to Raise Affirmative Defenses in Amended Answer instead of Summary Judgment Motion

Next, appellants complain that appellees' motion for summary judgment raises defenses and issues that are not supported by their Second Amended Answer and that any unpled claim or defense first presented in a motion for summary judgment should be denied. Specifically, appellants contend that appellees raised the affirmative defenses of (1) contractual defenses to usury, (2) execution of guarantees as an assumption of a "contingent obligation" not as an assumption of a debt as set forth in the Alamo Lumber[4] case, (3) "lack of consideration" to guarantors, (4) legality of appellees' action in response to appellants' claim of tortious interference with government payments, and (5) failure to provide an accounting because requested action was moot.[5]

---

[4] Alamo Lumber Co. v. Gold, 661 S.W.2d 926 (Tex. 1983).

[5] Appellants also complain of the court's granting of appellees' request for summary judgment as to post-bankruptcy lien claims; however, the trial court actually denied appellees' request on this issue. Therefore, we will not address this point.

An affirmative defense is a denial of plaintiff's right to judgment even if plaintiff establishes every allegation in its pleadings. Highway Contractors, Inc. v. W. Tex. Equip. Co., 617 S.W.2d 791, 794 (Tex.Civ.App.–Amarillo 1981, no writ). An affirmative defense does not rebut the factual propositions of the plaintiff's pleading. Gorman v. Life Ins. Co. of N. A., 811 S.W.2d 542, 546 (Tex. 1991). However, when in context, the pleadings, record of the trial proceeding, and briefs make it clear that, contrary to appellants' contention, appellees' grounds did not constitute affirmative defenses because they directly refute appellants' claims rather than seeking an avoidance of appellants' right to judgment. Therefore, appellees' grounds contained in its fourth motion for summary judgment were not required to be contained in appellees' Amended Answer. See TEX. R. CIV. P. 94. Each of the grounds raised by appellees in their Fourth Motion for Summary Judgment were properly considered under a traditional summary judgment or, alternatively, as grounds for no-evidence summary judgment.

## (C) Deposit of jointly payable checks into the court registry

Next, appellants' contend that appellees' request to require the deposit of jointly payable checks into the court registry is not a proper summary judgment issue but, in fact, should have been presented as a  "Motion for Mandamus" or a motion to enforce a settlement. We agree with appellants that the court's order requiring appellant to deposit jointly payable checks is not a summary judgment issue; however, we disagree with appellants that the trial court treated it as a summary judgment issue.   Appellants' contention is the subject of its sixth issue and is fully analyzed therewith. See infra Issue Six.

9

(D) Summary judgment on appellants' post-settlement usury claim

Appellants also contend that the trial court improperly denied appellants' Motion to Strike Defendants' No-Evidence Motion for Lack of Particularity regarding its post-settlement usury claims and, in turn, object to the appellees' no-evidence motion for summary judgment. However, appellees also challenged appellants' post-settlement usury claims under a traditional summary judgment. Under the trial court's order on appellees' fourth motion for summary judgment, the trial court determined that "Defendants' [appellees'] motion for summary judgment, and/or in the alternative, motion for no-evidence summary judgment dismissing all of Plaintiffs' [appellants'] post-settlement usury claims is hereby GRANTED."

When a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993). Since, appellees presented a traditional summary judgment ground that is not challenged on appeal, we will not overturn the trial court's judgment. Malooly Bros., Inc. v. Napier, 461 S.W.2d 119, 120 (Tex. 1970). We conclude that the trial court did not err in dismissing appellants' post-settlement usury claims. Having addressed all of appellants' contentions under Issue Four, we overrule appellants' fourth issue.

Issue Five: Appellees' Second and Fifth Motions for Summary Judgment

On their fifth issue, appellants contend that the trial court erred in granting appellees' second and fifth motions for summary judgments. In appellees' Second Motion for Partial

10

Summary Judgment, appellees stated that appellants' claim alleging violations of the Bank Holding Company Act were barred by an order from the United States Bankruptcy Court for the Northern District of Texas and by a prior settlement agreement. Appellees' Fifth Motion for Partial Summary Judgment moved for summary judgment and challenged the damages element of appellants' breach of contract claim. Specifically, appellees allege that appellants did not demonstrate the damages suffered because appellants were seeking to revert to pre-settlement adversary claims as a measure of damages instead of seeking damages under the settlement agreement.[6]

Appellants' complaint of the trial court's granting of appellees' second and fifth motions for summary judgment is that the trial court did not allow appellants to elect to sue appellees under the underlying "released" causes of action or adversary claims, a remedy appellants believe is available to them because they claim they were fraudulently induced into the settlement agreement. Hence, appellants contend that they should be allowed to revive their adversary claims as they existed prior to the settlement agreement. Further, appellants contend that appellees did not meet their burden of negating all of their causes of action with competent summary judgment evidence and reiterate previous contentions of grossly inadequate consideration, inadequate foreclosure notices, and illegal non-judicial foreclosure sale. But, yet again, as in appellants' third issue, we agree with the trial court that appellees successfully demonstrated that there were no genuine issues of material

---

[6] Appellees' Fifth Motion for Summary Judgment also sought the dismissal of appellants' claims for post-settlement damages, however, the trial court did not grant appellees' request for summary judgment as to post-settlement damages.

11

fact when the evidence was viewed in the light most favorable to the nonmovant. Am. Tobacco Co., 951 S.W.2d at 425.

As to whether appellants should be allowed to revive adversary claims, we hold that appellants contracted away their rights to adversary claims when the parties entered into a settlement agreement defining the parties' responsibilities and remedies. See Wagner, 295 S.W.2d at 893; Gulf Ins. Co. v. Burns Motors, Inc., 22 S.W.3d 417, 422 (Tex. 2000). We overrule appellant's fifth issue.

## Issue Six: Order regarding joint payment checks deposited in court registry

Next, appellants contend that appellees were granted summary judgment regarding monies to be deposited into the court registry.[7] However, the court, in ordering the monies to be deposited into the court registry, did not make any determination as to the ownership or rights associated with the monies. It is entirely permissible for a trial court to order disputed funds paid into the registry of the court until its ownership is determined if there is evidence that the funds are in danger of being lost or depleted. Structured Captial Resources Corp. v. Arctic Cold Storage, L.L.C., 237 S.W.3d 890, 894 (Tex.App.–Tyler 2007, no pet.). Merely placing the funds into the court's registry does not settle the question of the ownership of the funds and, therefore, cannot be considered an order on the merits. Id. at 894-95. As such we do not consider the trial court's actions as an order granting appellees summary judgment on this issue. We overrule appellants' sixth issue.

---

[7] The monies were several jointly payable checks used as collateral for appellants' debt to appellees.

12

Issue Seven: Homestead rights of Robert (Bob) and Ella Veigel

Finally, appellants contend that the trial court erred in failing to recognize Bob and Ella's homestead rights in the foreclosed property. In support of their claim, appellants direct this court to the affidavits of Bob and Ella Veigel, dated November 16, 2004, filed in Response to Appellees' Motion for Summary Judgment. Appellants contend that these affidavits raise fact issues that prevent the granting of appellees' request for summary judgment. However, in their own response, appellants state that "upon [Bob's father's] death [the 200 acres of land] were gifted to a trust of which Bob was both a trustee and a beneficiary. . . . Although Bob conveyed his interest to Terra XXI Ltd., partnership, Ella never joined in the conveyance." The trial court, in its Order on Plaintiffs' and Defendants' Respective Motions for Summary Judgment, made findings of fact including that part of the disputed land (Lots 60, 61, and 62) were never owned by Bob or Ella but by the Veigel Family Trust; therefore, the court found that Bob and Ella did not have any homestead interest in that property. Further, the trial court found that another part of the disputed property, Lot 42, was owned by Bob and Ella, but that they conveyed the property to Terra by special warranty deed on November 1, 1994. Hence, the trial court found that Bob and Ella did not possess any homestead interest in Lot 42.

Once again, when both parties move for summary judgment and the trial court grants one motion and denies the other, the appellate court reviews the summary judgment evidence of both parties, determines all questions presented, and renders the judgment that the trial court should have rendered. Bradley, 990 S.W.2d at 247. In Texas, in order to establish homestead rights, there must be proof of concurrence of usage and intent on

13

the part of the owner to claim the land as a homestead. <u>Prince v. North State Bank of Amarillo</u>, 484 S.W.2d 405, 409 (Tex.Civ.App. 1972, writ ref'd n.r.e.). The intent of the owner to claim the land as a homestead is to be established by competent proof at the time of the execution of the deed of trust. <u>See</u> <u>id</u>. at 411. If the homestead claimant contends that the property was being used in connection with his residence, the determining factor is whether the claimant's acts were such as to put a reasonable prudent person on notice that the tract constituted a part of the homestead. <u>Id</u>. As a general rule, when a homestead claimant occupies a house on a lot as a homestead, other lots used only incidentally or secondarily to home purposes are not part of the homestead. <u>See</u> <u>id</u>. at 410 (<u>citing</u> <u>Calvert v. Hanna</u>, 140 S.W.2d 976 (Tex.Civ.App.–Amarillo 1940, no writ)).

In this case, appellants did not present any evidence that, at the time of conveyance from Veigel Family Trust to Terra, Bob and Ella to Terra, or from Terra to AAC, that the parties intended to reserve any homestead rights. At best, appellants' evidence of the affidavits of Bob and Ella show an intent to claim homestead rights as of November 16, 2004. Appellants fail to cite to any other reference in the voluminous record that could demonstrate usage or the intent to retain the property as a homestead at the time of conveyance of the property to either Terra in 1994 or to AAC in 1998 and we are unable to find any such supporting evidence. <u>See</u> TEX. R. APP. P. 38.1(i); <u>Arredondo v. Rodriguez</u>, 198 S.W.3d 236, 238-39 (Tex.App.–San Antonio 2006, no pet.) (this court is not required to wade through a voluminous record to marshal appellants' proof, but it is the duty of the party to show that the record supports its contention). Hence, we conclude that the trial

14

court did not err in finding no genuine issues of fact regarding the homestead rights to Lots 60, 61, or 62.

Finally, although appellant, Ella Veigel, contends that she did not join her husband, Bob, in the conveyance of the property, Lot 42, to Terra, the record demonstrates that, by a Special Warranty Deed signed by both Bob and Ella Veigel, the property was conveyed to Terra on November 1, 1994 without any mention of a reservation of homestead rights. Further, the fact that the Veigels may have lived in a home on Lot 61 does not change or give rise to any evidence that other lots, specifically Lot 42, which were used only incidentally or secondarily to home purposes, are part of any homestead that may have existed on Lot 61. See Prince, 484 S.W.2d at 410.

We conclude that the trial court did not err in its findings of fact or in granting appellees summary judgment regarding Bob and Ella Veigel's homestead rights. We overrule appellants' seventh issue.

## Conclusion

Having overruled all of appellants' issues, we affirm the trial court.


Mackey K. Hancock
Justice

15